**UNITED STATES of America,
Appellant,**

v.

**Douglas Cormack WELSCH, Appellee.**

**No. 653-70.**

United States Court of Appeals,
Tenth Circuit.

Aug. 9, 1971.

Ruth C. Streeter, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., with her on the brief), for appellant.

Appellee waived oral argument and filed no brief.

Before SETH, ALDISERT * and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

The United States has taken this appeal from an order entered by the United States District Court for the District of New Mexico which granted the defendant's motion to suppress certain evidence seized during the course of the defendant's arrest. The motion was made prior to trial and was directed to a large number of pills or tablets which the Government asserts contained LSD or mescaline.

The record on this appeal shows that a special agent for the Bureau of Narcotics and Dangerous Drugs, Amadeo Medina, posing as a prospective purchaser of drugs, had been in communication with the defendant. At the time of the incident here in question the defendant had come to Albuquerque, New Mexico, and was met by Agent Medina at the airport. The defendant was carrying a brown leatherlike suitcase at the time. He and Agent Medina proceeded from the Albuquerque Airport to a motel room which had been engaged in the name of the defendant by a third party.

On the arrival of the defendant and Agent Medina at the motel room the defendant opened the suitcase, and showed its contents, a large number of pills, to the agent. The agent then advised the defendant that he wished to have his personal chemist test the tablets before a purchase was made. This appears to have been in accordance with a previous understanding that this would be done. The agent called his "chemist," who was in fact Special Agent Charles Ray. Agent Ray came to the motel room, was admitted, and the defendant thereupon reached under one of the beds and withdrew the brown leatherlike suitcase, opened it, showing the contents to Ray, and permitted Agent Medina to take sample pills therefrom to give to Agent Ray for testing. When Agent Ray had the samples in hand, which consisted of some sixteen tablets, he advised the defendant and Agent Medina that he would depart to make the chemical tests and would return in some fifteen or twenty minutes.

Agent Ray, upon leaving the motel room, took the sample tablets to a nearby location where he and another agent performed a field test on them for the presence of LSD and mescaline. Their testimony was that the test was positive in that it indicated the possibility that LSD and mescaline were present in the tablets. The test having been completed, Agent Ray, together with some additional special agents, returned immediately to the motel room for the purpose of arresting the defendant. Upon their arrival, some twenty minutes after Agent Ray's departure from it, they knocked on the door and were prepared to force it open but Agent Medina opened it from the inside. The Special Agents who then accompanied Ray thereupon arrested the defendant, and at about the same time Agent Ray reached down and removed the suitcase from underneath the bed. This suitcase was in the same place at which it had been located when he had previously been shown it by Welsch. The agents had no warrant for the arrest of Welsch nor did they have a search warrant. It was estimated by the agents that the suitcase contained approximately 75,000 tablets or pills of LSD and mescaline.

The trial court found there was probable cause for the arrest of the defend-

* Of the Third Circuit, sitting by designation.

ant, and we agree. The trial court in response to defendant's motion suppressed the contents of the suitcase but denied the defendant's motion to suppress as evidence the sixteen pills which had been taken for analysis by Agent Ray on his first visit to the motel room. The Government contends that the trial court was in error in suppressing the contents of the suitcase seized as above described.

■ As indicated above, we agree with the trial court that there was probable cause for the arrest of Welsch without a warrant and the entry into the motel room for this purpose was permissible. The Supreme Court has not directly decided the propriety of such an entry but has assumed it to be permissible under the circumstances here present. Jones v. United States, 357 U. S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

■ In the case as it reaches us on this appeal, we are not concerned with a general search of the motel room in which the defendant was properly arrested, but with a seizure alone. The same Fourth Amendment protections of course are applicable. At the time the arrest was made, Agent Ray seized the suitcase containing the tablets at the place from which he had seen it removed by the defendant about twenty minutes previously for the purpose of providing him with samples. When seized, the suitcase could not actually be seen from the place of arrest, but the agent upon his return to the motel room for the purpose of arresting Welsch knew its location and what it contained. We hold that it is not significant in what capacity he had obtained this information a few minutes before as he was lawfully on the premises. See Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed. 2d 856.

Under these facts, and considering the time interval, we must regard the suit-case as if it had been in "plain sight" at the time of the defendant's arrest. The reasons for the existence of the "plain sight" exception, which need not be here related, are applicable, are persuasive under these circumstances, and convince us to apply the "plain sight" doctrine.

In considering the time Agent Ray had to act, and in view of the fact that he had told the defendant that the test would take some twenty minutes, the record shows that there was not time to perform the tests within this period and to secure a warrant for the arrest of the defendant or a warrant for the search of the premises. The agents so indicated in their testimony. It is apparent under these conditions that Agent Ray could not have stayed away any extended time from the motel room. We hold that there was not time after testing the pills for the agents to apply for, have issued, and serve warrants for arrest or for search.

The Supreme Court, in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, considered the plain sight doctrine under somewhat comparable circumstances. The opinion of the Court, insofar as it was concurred in by a majority, and as initially published, indicates that in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, the Court attempted to confine the exceptions to the warrant requirements "to their appropriate scope." The opinion of the Court in Section II D states: "The 'plain view' exception is intimately linked with the search incident exception * * *," and it also said: "To permit warrantless plain-view seizures without limit would be to undo much of what was decided in *Chimel*, * * * *" The majority opinion in the same section also states:

"To begin with, in Chimel v. California, *supra*, we held that a search of the person of an arrestee and of the area under his immediate control could be carried out without a warrant. We did not indicate there, and

do not suggest here, that the police must obtain a warrant if they anticipate that they will find specific evidence during the course of such a search. See n. 24 *supra*."

The note 24 in the above quotation refers to a footnote in the opinion of the Court under Section II C thereof which will be hereinafter referred to. Again the opinion of the Court in Coolidge in the concluding paragraph of Section II D says in part:

"We are convinced that the result reached in this case is correct, and that the principle it reflects—that the police must obtain a warrant when they intend to seize an object outside the scope of a valid search incident to arrest—can be easily understood and applied by courts and law enforcement officers alike."

We consider that the portions of the opinion of the Court in Coolidge which are above referred to are applicable to the case before us in ruling on this appeal from disposition of a pretrial motion. In reference to the last quotation in the above paragraph, the Court refers to items which the officers "intend to seize." We take this to mean preexisting knowledge of the identity and location of an item sufficiently in advance of the seizure to permit the warrant to be applied for and issued. In the case before us, as indicated above, there was no such time interval and we are thus placed within what was in "plain sight" and within the limitations of a Chimel rule "search." Applying these standards, we reach the conclusion that the seizure was within such limitations. It is apparent that when an object is in "plain sight," under the definition we have used in this appeal, its location relative to the place of arrest may become of less significance. But in any event, and under the facts before us, the suitcase in question was located at a place within the motel room and close to the point where the arrest was made. It was within the Coolidge-Chimel "plain sight" space limitations although only in constructive sight.

In the opinion of the Court in the Coolidge case in Section II C thereof, there appears a footnote 24 which considers in some detail the relationship of the plain view doctrine to Chimel. This is the section of the opinion of the Court which announces the "inadvertency" condition to the plain sight rule, and it does not appear from the several opinions announced by the Court that this section was concurred in by a majority. It is however significant even if the inadvertent reference is ignored. The writer of the opinion of the Court in this footnote states there is no conflict between the plain view doctrine and Chimel, and says in part:

"Where, however, the arresting officer inadvertently comes within plain view of a piece of evidence, not concealed, although outside of the area under the immediate control of the arrestee, the officer may seize it, so long as the plain view was obtained in the course of an appropriately limited search of the arrestee."

The several opinions in Coolidge v. New Hampshire make reference to the seizure of "contraband," but also to Warden v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782. Contraband was seized in the case before us and we are not concerned with the question of whether or not a distinction between contraband and other evidence has really survived Warden v. Hayden.

This court has previously considered the seizure of evidence in plain sight made during an arrest in pre-Chimel situations, and with reliance on Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067. In United States v. Ledbetter, 432 F.2d 1223 (10th Cir.), the officers were in a room in an apartment making an arrest of the defendant and saw a sawed-off shotgun behind a partially open door some six feet from the place the defendant was seated. It

**224**

was there held that the gun was properly seized as being in plain sight, citing Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, and Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. Similar facts were present in United States v. Von Roeder, 435 F.2d 1004 (10th Cir.); United States v. Holgerson, 424 F.2d 1130 (10th Cir.); United States v. Eagleston, 417 F.2d 11 (10th Cir.), and United States v. Bourassa, 411 F.2d 69 (10th Cir.). The distinction was also made in United States v. Baca, 417 F.2d 103 (10th Cir.), between the seizure of items in plain view at the place of the arrest and items resulting from a general search. See also, Musgrove v. Eyman, 435 F.2d 1235 (9th Cir.), and United States v. Molkenbur, 430 F.2d 563 (8th Cir.).

Under the prevailing but ever-changing case law on this somewhat confused subject, we hold that the seizure of the suitcase and its contents was proper and the evidence should not be suppressed.

■ The procedure on the appeal here taken by the Government is questioned. Upon the entry of the district court's order on the motion to quash the Government filed a timely notice of appeal as prescribed by 18 U.S.C. § 3731, but it however did not submit the certification described in section 3731 within the thirty day period provided for the filing of a notice of appeal. The statute allowing a Government appeal does not expressly set a time limitation for certification. A failure to file the certificate within thirty days is an irregularity in perfecting the appeal but does not operate to deprive the court of jurisdiction. See, Brennan v. United States Gypsum Co., 330 F.2d 728 (10th Cir.); Olympic Insurance Co. v. H. D. Harrison, Incorporated, 413 F.2d 973 (5th Cir.), and Rule 3, Fed.Rules App.Proc.

In view of the holdings herein the case must be remanded to the district court for further proceedings in accordance with this opinion.