**John H. MEIER, Plaintiff-Appellee,**

v.

**William KELLER and Robert Bork, Defendants-Appellants.**

**John H. MEIER, Plaintiff-Appellant,**

v.

**William KELLER et al., Defendants-Appellees.**

**John H. MEIER, Plaintiff-Appellant,**

v.

**DeVoe HEATON et al., Defendants-Appellees.**

**Nos. 74–1182, 74–1673, 74–1910.**

United States Court of Appeals, Ninth Circuit.

June 27, 1975.

As Modified on Denial of Rehearing and Rehearing En Banc Oct. 1, 1975.

Charles Brookhart, Atty. (argued), Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellants.

Robert H. Wyshak (argued), Los Angeles, Cal., for John H. Meier.

OPINION

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and CONTI,* District Judge.

* The Honorable Samuel Conti, United States District Judge for the Northern District of California, sitting by designation.

DUNIWAY, Circuit Judge:

These appeals arise from separate actions which Meier filed in two different district courts to prevent Suckling, an attorney who had done legal work in connection with Meier's sales of certain mining claims, from giving grand jury testimony and cooperating with a federal investigation of possible tax evasion and conspiracy charges against Meier. Both complaints, the first filed in the Central District of California, the second in the District of Nevada, alleged that Suckling had violated the attorney-client privilege by providing information and certain documents to federal agents, and that Meier's Fourth, Fifth, Sixth and Fourteenth Amendment rights would be violated if the documents and Suckling's testimony were presented to a grand jury. Named as defendants in each case were Suckling, the Attorney General of the United States, and the United States Attorney for the forum district. The prayers were for a temporary restraining order, a preliminary and a permanent injunction against Suckling, prohibiting him from appearing before any grand jury, suppressing all leads and evidence derived from his cooperation, and compelling immediate return to Meier of all documents belonging to him.

In the Central District of California Meier was partially successful. The district court granted relief similar to that sought, but declined to encompass anything that might be done in the District of Nevada in its decree, because the district court there had already issued an ex parte order requiring Suckling to testify. In the District of Nevada, the district court dismissed Meier's identical action. The Attorney General and the United States Attorney [the government attorneys] appeal from the California district court's decree [No. 74–1182]. Meier cross-appeals, urging that the court erred in excluding the District of Nevada from the scope of its decree [No. 74–1673]. He also appeals from the dismissal of his action in the District of Nevada [No. 74–1910]. Suckling has not appealed. We reverse and remand in No. 74–1182, and dismiss in Nos. 74–1673 and 74–1910.

## I. *The Facts.*

When Meier filed his actions in the district courts, he was already the subject of a criminal prosecution in the District of Nevada. A grand jury for that District, on August 9, 1973, had returned a two count indictment charging him with evasion of federal income taxes for the calendar years 1968 and 1969. Later, at least partially on the basis of information provided by Suckling, the government decided to seek additional or superseding indictments. Suckling had described an elaborate scheme whereby Meier and others would cause nearly valueless mining claims to be sold through strawmen and dummy foreign corporations to Meier's employer, the Hughes Tool Company, for extravagantly inflated sums of money. Apparently the plan was that the proceeds, reaped by the tax exempt foreign corporations, were to be distributed ultimately to the participants in the scheme by cash payments and deposits in secret foreign bank accounts.

On November 20, 1973, the government applied *ex parte* to the district court for Nevada for an order compelling Suckling to testify before the grand jury. Accompanying the application was Suckling's affidavit describing his relationship with Meier and the nature of his testimony, and a government memorandum arguing that the attorney-client privilege did not apply because Meier had retained Suckling to assist him in criminal and fraudulent activities. The district judge agreed with the government's position and ordered Suckling to testify, which Suckling did later the same day.

On the next day, November 21, Wyshak, Meier's attorney, learned from Cotton, an attorney in the Tax Division of the Department of Justice, that the government planned to seek new indictments. During the conversation Wyshak inquired as to possible venue for the indictments. Cotton mentioned Utah, California, Nevada and possibly several oth-

er states, but told Wyshak that the Internal Revenue Service had recommended Nevada. There is no indication that Wyshak then knew that Suckling had already testified before a grand jury, but as early as November 29, he and Meier began to suspect that Suckling *would* testify. On that date Wyshak had Meier execute an affidavit reciting his retention of Suckling and his belief that Suckling would soon go before a grand jury. The affidavit was later filed with each of Meier's complaints.

In early December, Wyshak talked to Lusk, an Assistant United States Attorney in Nevada, and learned that the new or superseding indictments were to be returned in Nevada, probably on December 20. Without disclosing his plan to file suit in California, Wyshak sought to delay the new indictments until the second week of January. However, it was not until the district judge supervising the grand jury became ill that the government agreed to a delay.

On December 20, Meier's complaint and his November 29 affidavit were filed in the district court for the Central District of California. At the hearing on the request for a temporary restraining order, held the next day, the government objected that the Central District of California was not the appropriate forum pointing out that Meier had already been indicted in Nevada, that Suckling had already appeared before the grand jury there, and that there were no plans to indict Meier anywhere else. The government offered to call the United States Attorney as a witness to confirm that his office did not plan to prosecute Meier, but the district judge refused the offer. In addition, Wyshak, cross-examined by the government, was unable to specify any reason for his belief that Meier would be indicted in California other than Cotton's early conjecture about possible venue. Subsequent information should have made it plain to Wyshak, and to the district court, that this belief was wide of the mark. The district judge, however, apparently outraged that the Nevada district court had

issued an order requiring Suckling to testify without notifying Meier, and wishing to ensure that a similar procedure was not followed in his own district, issued the temporary restraining order, but expressly excluded the District of Nevada from its operation.

Dissatisfied with this limited relief, Meier filed an identical complaint in the district court for Nevada on December 26. The same judge who had earlier ordered Suckling to testify rejected Meier's argument that the California order was binding on grounds of collateral estoppel and refused to grant a second temporary restraining order. Hearings on the requested preliminary injunction were put off.

On January 2, 4 and 9, 1974, the district court for the Central District of California held hearings on the request for a preliminary injunction. By this time the court had received under seal Suckling's affidavit and the other documents on which the district judge in Nevada had relied in ordering Suckling's grand jury appearance. But the court did not have before it either the transcript of Suckling's testimony or the documents claimed by Meier, both of which were subject to Meier's broad and unspecific claims of privilege, on which the court was about to rule. Despite the uncertainty about the character of the allegedly privileged material, the district judge made no attempt to obtain it for *in camera* review. Instead, and in spite of further government disclaimers of interest in a California prosecution, the judge, on January 9, 1974, issued an order, captioned a permanent injunction, which required the return of all the documents to Meier and enjoined the government attorneys

> from conducting any investigation or Grand Jury investigation and from initiating any criminal proceeding, in the Central District of California, or any other District except the District of Nevada, in which there will be used, directly or indirectly, any unlawful testimony or evidence containing privileged confidential communications be-

tween plaintiff and Suckling obtained from Suckling or any leads derived therefrom; provided, however, that [they] may, on at least 30 days' written notice delivered to plaintiff and his . . . counsel request relief by this Court from this Order for good cause shown.

Just five days after this order was entered, the grand jury for the District of Nevada returned two new indictments charging Meier and others with tax evasion and conspiracy. One count alleged tax evasion by Meier for the calendar year 1969, the same offense charge in Count II of the pending August, 1973, indictment, and thus operated as a superseding indictment. The district court for Nevada, noting the new indictments, dismissed Meier's action on January 30, 1974, without holding a hearing on the request for a preliminary injunction.

## II. *The Suggestion of Dismissal.*

After the appeals before us were filed, Count III of new indictment No. LV 74–10, in the District of Nevada, was severed and transferred to the Central District of California at Meier's request. Counts I and II were retained for trial in the District of Nevada. It was agreed that the proceedings in Nevada on the second new indictment, No. LV 74–9, and the earlier August, 1973, indictment would be held in abeyance pending the outcome of the LV 74–10 cases.

On May 17, 1974, Meier filed a motion to suppress and for return of property in the Nevada LV 74–10 prosecution. The motion was based on the same grounds, and was directed at the same evidence and property, as are involved in these appeals. The trial judge denied the motion and this court later denied Meier's petition for writ of mandamus and/or prohibition. *Meier v. United States District Court, District of Nevada,* September 12, 1974, No. 74–2650. On October 17, 1974, Meier filed a petition for a writ of certiorari in the Supreme Court.

Meanwhile, the Nevada LV 74–10 case was set for trial on December 2, 1974. Meier failed to appear. The trial judge

ordered his bail forfeited, issued a warrant for his arrest, and reset the case for January 3, 1975. Meier, who currently resides in British Columbia, again failed to appear. He also failed to appear for a hearing in the Central District of California case on January 27, 1975. There too he was declared a fugitive and a warrant for his arrest was issued.

In the meantime, the Supreme Court had denied the petition for certiorari with the notation "*See Molinaro v. New Jersey,* 396 U.S. 365 [90 S.Ct. 498, 24 L.Ed.2d 586] (1970)," 419 U.S. 1116, 95 S.Ct. 796, 42 L.Ed.2d 815 (1975). In *Molinaro* the Court dismissed a criminal appeal because the defendant was a fugitive. The complaints in the cases before us here are functionally, but perhaps not technically, the equivalents of motions to suppress evidence and for the return of property under Rules 41(e) and 41(f) of the Federal Rules of Criminal Procedure. They differ from such motions in only two respects: Suckling, neither a defendant nor a governmental employee, is named as a defendant, and the proceedings were arguably commenced in advance of indictment (assuming the dubious proposition, advanced by Meier, that his suits are unrelated to the August, 1973, indictment). While it is manifest that these cases are important only in relation to the pending criminal prosecutions, the jurisdictional basis for such preindictment motions, and their proper characterization as "civil" or "criminal" proceedings, have always been somewhat hazy. *See, e. g., Hoffritz v. United States,* 9 Cir., 1956, 240 F.2d 109, 112 & n. 8; *Rodgers v. United States,* S.D.Cal., 158 F.Supp. 670, 675–78, *petition for mandamus and/or prohibition denied,* 9 Cir., 1958, *id.* at 684 note. Thus, while it might be appropriate to dismiss Meier's appeals under the *Molinaro* rationale, we elect not to do so.

## III. *The Appeals from the Central District of California.*

### A. *Jurisdiction on Appeal.*

■ To the extent that the proceedings below are regarded as civil in na-

ture, we have jurisdiction to hear the government attorneys' appeal in No. 74–1182 under 28 U.S.C. § 1291 or § 1292(a)(1). Meier concedes as much. He argues that if the proceedings are to be treated as part of a criminal prosecution, as the government attorneys urge, the Criminal Appeals Act, 18 U.S.C. § 3731 (Supp.1975), does not provide appellate jurisdiction. That section provides in pertinent part as follows:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [*sic*] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

> The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

Meier argues that this section does not apply because the appeal is not "by the United States," but by two individual government attorneys. Alternatively, he contends that the government attorneys' failure to file the required certificate within thirty days of the district court's decree is a fatal defect in the perfection of the appeal. Each of these arguments is without merit. We decline to permit Meier to foreclose the government's

right to appeal simply by the manner in which he styles his pleadings. Meier's complaint was, in substance, against the government, as it would be under Rules 41(e) and (f).

■ Other circuits have held that delayed filing of a § 3731 certificate does not destroy appellate jurisdiction. See, e. g., *United States v. Wolk*, 8 Cir., 1972, 466 F.2d 1143, 1146 n. 2; *United States v. Kleve*, 8 Cir., 1972, 465 F.2d 187, 189–90; *United States v. Welsch*, 10 Cir., 1971, 446 F.2d 220, 224. While such delay is not to be regarded with favor, we agree that it does not rise to jurisdictional dimensions.

We conclude that we have jurisdiction in No. 74–1182. We need not, for reasons that will appear, decide whether we also have jurisdiction in No. 74–1673.

### B. Jurisdiction of the District Court.

The jurisdictional character of the proceeding below is somewhat muddled. Meier has acknowledged that his "complaint" is "in the nature of" a preindictment motion to suppress and for return of property. Pointing to the August, 1973, indictment, the government attorneys urge that the proceeding was in fact a pretrial motion under Rules 41(e) and 41(f), F.R.Crim.P.,[1] tied to the pending criminal prosecution in Nevada, and that therefore the district court for the Central District of California lacked subject matter jurisdiction. While this argument is in some respects appealing, we note several defects in it. First, only criminal defendants and the government are ordinarily parties to a Rule 41 motion. Suckling is neither. Second, while the 1972 amendments to Rule 41 provide

---

1. These Rules provide as follows:

   (e) *Motion for Return of Property.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall

   be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

   (f) *Motion to Suppress.* A motion to suppress evidence may be made in the court of the district of trial as provided in Rule 12.

that motions to suppress may be brought only in the district of trial, motions for the return of property may still be brought in the district of seizure.[2]

Meier argues that the district court's power over the case springs from a different jurisdictional fount, the so-called "anomalous jurisdiction," see Lord v. Kelley, D.Mass., 1963, 223 F.Supp. 684, 688–89, appeal dismissed 1 Cir., 1964, 334 F.2d 742. This has been variously explained as an inherent "supervisory" or "disciplinary" power over officers of the court, see, e. g., Centracchio v. Garrity, 1 Cir., 1952, 198 F.2d 382, 385–86; United States v. Maresca, S.D.N.Y., 1920, 266 F. 713, 717, or as the power of a court "[to] reach forward to control the improper preparation of evidence which is to be used in a case coming before it, and . . . by summary procedure [to] restrain oppressive or unlawful conduct of its own officers," Foley v. United States, 5 Cir., 1933, 64 F.2d 1, 3; In re Fried, 2 Cir., 1947, 161 F.2d 453, 458; Smith v. Katzenbach, 1965, 122 U.S.App.D.C. 113, 351 F.2d 810, 815–16. While this power is not stated in any jurisdictional statute, it has long been recognized as a basis for independent, preindictment suits in equity seeking the suppression and return of illegally obtained evidence. See Hunsucker v. Phinney, 5 Cir., 1974, 497 F.2d 29, 31–35, and cases there collected.

■ Thus there is a theoretical basis for the district court's assumption of jurisdiction, but the anomalous jurisdiction is equitable in nature, and "it does not automatically follow that this unique power should be exercised whenever it exists." Hunsucker v. Phinney, supra, 497 F.2d at 34. Rather, it is to be exercised, if at all, with caution and restraint and in accordance with familiar limitations on the granting of equitable relief. Id. at 34; Smith v. Katzenbach, supra; Centracchio v. Garrity, supra; Donlon v. United States, D.Del., 1971, 331 F.Supp.

979; Fifth Avenue Peace Parade Committee v. Hoover, S.D.N.Y., 1971, 327 F.Supp. 238, 242; Lord v. Kelley, supra; Rodgers v. United States, supra; 3 C. Wright, Federal Practice and Procedure, Criminal, § 673 (1969). Rule 41 is but "a crystallization of [this] principle of equity," Hunsucker v. Phinney, supra, 497 F.2d at 34; Smith v. Katzenbach, supra, 351 F.2d at 814, and thus subject to the same equitable limitations.

As will be shown, we think that regardless of the jurisdictional premise of the proceeding in the trial court, equitable considerations required that court to dismiss Meier's action. Thus, we do not reach the theoretical question of the district court's subject matter jurisdiction, and do not consider to what extent, if any, Rule 41 operates as a restriction on the forum in which the principle of anomalous jurisdiction is applicable.

### C. Equitable Jurisdiction.

■ "The facts of this case," as the government brief aptly puts it, "clearly demonstrate the improper use of a civil action filed in one district to hamper an ongoing criminal tax evasion proceeding in another district." At the time Meier's complaint was filed, he had already been indicted in the District of Nevada, he knew that he was about to be indicted again in that district, and he had no sound reason to suspect that superseding indictments, or any indictments, would be returned elsewhere. At the temporary restraining order hearing, both Meier and the district judge were advised that Suckling had already, with the blessing of the Nevada district court, given the testimony sought to be suppressed. During the proceedings at least three government attorneys, including the Assistant Attorney General, Tax Division, went on record denying that there was a plan to prosecute in a California district court.

---

2. We note in this connection, however, that Meier's complaint does not allege where the

"seizure" of his documents from Suckling took place.

Under the circumstances, Meier's remedy was in the District of Nevada, and he failed to show that he would be irreparably injured if the equitable relief prayed for were not granted by the district court in California. *See Hunsucker v. Phinney, supra,* 497 F.2d at 34; *Rodgers v. United States, supra,* 158 F.Supp. at 679–83. The bulk of the evidence sought to be suppressed had already gone to the grand jury, which was entitled to consider it even if it had been illegally obtained. *United States v. Calandra,* 1974, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561. To the extent that Meier's purpose was the suppression of the material at trial, or obtaining its return, he could have obtained a prompt adjudication of his claims by filing a Rule 41 motion in the criminal prosecution already pending in Nevada or, granting *arguendo* the doubtful proposition that the superseding indictments were unrelated to the indictment already returned by filing a preindictment motion in Nevada. The Nevada district court was already familiar with the case, had jurisdiction over both prosecutions, and had already ruled, albeit *ex parte,* on the claims Meier was pressing. Unlike the California district court, it had ready access to a transcript of the allegedly privileged testimony.

Instead, Meier chose to file his action in another district. His reasons for doing so are all too evident: at best, he hoped for a forum more sympathetic to his position, at worst, he hoped to delay the Nevada prosecutions and to gain broader discovery than that normally available in a criminal proceeding. None of these objectives was worthy of the equitable sanction of the California district court.

*Smith v. Katzenbach, supra,* was another case in which a prospective criminal defendant attempted to shop for a forum by filing, under the guise of a civil action, in a district other than those specified in Rule 41, what was essentially a pre-trial motion. In upholding the district court's dismissal of the action for want of equity, the court observed as follows:

> To gain the perspective needful for this case we stretch our canvas beyond the traditional rubric of adequacy of remedy at law. A court properly exercises its discretionary powers by withholding relief that may involve interjection into criminal proceedings in another forum, particularly where it adheres to a policy indicated by Congress, as here in [former] Rule 41(e) [now Rules 41(e) and 41(f)], of the course of ultimate determination of questions involved in such proceedings. See Douglas v. City of Jeannette, 319 U.S. 157, 162–163, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

*Id.,* 351 F.2d at 816.

The soundness of this principle is apparent in the present case. But for Meier's flight, the conflicting adjudications and the appeals which resulted from his successful attempt to invoke the jurisdiction of an inappropriate forum might have delayed the commencement of two criminal trials, in contravention of the strong policy favoring speedy justice.

In addition, the "permanent injunction" issued by the California district court prohibited, by its terms,

> any investigation . . . in the Central District of California, or any other District except the District of Nevada, in which there will be used, directly or indirectly, any unlawful testimony or evidence containing privileged confidential communications between plaintiff and Suckling obtained from Suckling *or any leads derived therefrom.*

unless cleared by the district court after 30 days written notice to it and to Meier. This kind of order had a high potential for interfering with entirely proper investigation incident to the two prosecutions already pending in the District of Nevada. Suckling lives and practices law in the Central District of California and Meier lived and had business dealings there and in other districts covered

by the court's order during the years for which his tax liability was being looked into. Certainly it is an unprecedented anomaly for a court in one district to attempt to control a criminal prosecution in another district by requiring the government to give thirty days notice to the prospective defendant of its every investigatory move and then to obtain the court's approval before proceeding.

In our view, the California district court, in the proper exercise of its equitable discretion, should have squelched Meier's attempt to circumvent the Nevada district court's jurisdiction by declining to exercise its own jurisdiction, if any, and dismissing the action.

In view of our holding that the district court should have declined jurisdiction, we need not reach Meier's cross-appeal. Dismissal of the action will render Meier's appeal moot.

### IV. *The Appeal from the District of Nevada.*

■■■ The denial of a preindictment motion or comparable relief is an interlocutory, nonappealable order unless "the motion is solely for return of property and is in no way tied to a criminal prosecution *in esse* against the movant." *Di-Bella v. United States,* 1962, 369 U.S. 121, 131–32, 82 S.Ct. 654, 660, 7 L.Ed.2d 614. Meier's appeal meets neither criterion for appealability. His complaint sought suppression as well as return. And even if the August, 1973, indictment is viewed as independent of the superseding indictment, there was already a criminal prosecution *in esse* because presentment had already been made to the Nevada grand jury at the time the complaint was filed. *Id.,* 369 U.S. at 131, 82 S.Ct. 654. Thus, the appeal should be dismissed for want of jurisdiction in this court.

In No. 74–1182, the judgment appealed from is vacated and the case is remanded to the district court with directions to dismiss the action.

In No. 74–1673, the appeal is dismissed.

In No. 74–1910, the appeal is dismissed.