**Earl GUNSBY, Petitioner,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, State of Florida, Respondent.**

**No. 75–640 Civ. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

April 14, 1978.

Earl Gunsby, pro se.

J. Richard Rahter, St. Petersburg, Fla., for petitioner.

Mary Jo Gallay, Asst. Atty. Gen., State of Florida, Tampa, Fla., for respondent.

## MEMORANDUM OF DECISION

KRENTZMAN, District Judge.

This is a habeas corpus proceeding pursuant to 28 U.S.C. § 2254, wherein petitioner Earl Gunsby, a state prisoner, alleges a violation of his fifth amendment right to be free from self-incrimination and seeks release from his conviction.

The United States Magistrate of this Court submitted a report recommending that the Court grant the petitioner's writ of habeas corpus. This Court granted the petitioner's writ of habeas corpus and directed that the respondent either retry the petitioner within 120 days or release him. Upon appeal by respondent, the Fifth Circuit Court of Appeals reversed and remanded for an evidentiary hearing on the petitioner's claims. *Gunsby v. Wainwright*, 552 F.2d 127 (5th Cir. 1977).[1]

This Court conducted an evidentiary hearing at which time both the petitioner and the respondent presented evidence. After the hearing, the Court permitted the parties to submit post-hearing memoranda and directed the respondent to file the transcript of a co-defendant's state court trial.

On December 3, 1973, a salesman, Ronald Brown, working in St. Petersburg, Florida, was assaulted and robbed by two men. At the time of the robbery, Brown noticed a third person who appeared to be a lookout, but did not physically participate in the assault or the robbery. Petitioner was arrested in late December, 1973, and an information charging him with robbery was filed on December 28, 1973, by the state attorney for the Sixth Judicial Circuit of Florida. Petitioner entered a plea of not guilty to the charge on January 18, 1974. In addition to the petitioner three other men were charged with participation in the robbery: Tony Smith; Harvey Baker; and Gerald Suggs.

On March 1, 1974, after plea negotiations initiated by the state attorney, Donald O'Leary, the petitioner, with the assistance of his attorney, Morris Milton, changed his plea to guilty. The plea agreement was that petitioner would receive not more than seven and one-half years and that the state would not object if the state court decided to place the petitioner on probation. Additionally, the entire agreement was premised on the petitioner's testifying against the two co-defendants in the case. Immediately after the completion of the change of plea hearing, the petitioner, accompanied by Milton, O'Leary, and a court reporter, commenced the taking of the petitioner's statement regarding the robbery.

On March 28, 1974, the petitioner appeared as a state witness in the trial of Tony Smith. After questioning the petitioner for a short period of time on direct examination, the assistant state attorney, O'Leary, requested that the court permit him to cross-examine the petitioner with his March 1, 1974 sworn statement. The request by O'Leary was premised on his opinion that the petitioner was deviating from his prior statement regarding the involvement of Tony Smith.[2] The court permitted the respondent to cross-examine the petitioner. The jury at the completion of the testimony acquitted Tony Smith.

On June 26, 1974, the respondent moved to have the state court set aside the plea agreement because of the petitioner's testimony at the Smith trial. On July 15, 1974, the petitioner, with counsel, was questioned

---

1. The parties had stipulated to the facts prior to the initial appeal to the Fifth Circuit Court of Appeals. Apparently the stipulation went awry after the petitioner-appellee filed his appellate brief.

2. Respondent's trial counsel, Donald O'Leary, testified at the evidentiary hearing that the petitioner deviated substantially from his statement at the Tony Smith trial. Petitioner's counsel testified that there was no deviation, but merely error on O'Leary's part for not having asked the petitioner more specific questions at the time of the March 1, 1974 statement. Since the question of the legitimacy vel non of the revocation of the plea bargain does not rise to the constitutional dimension, the Court need not resolve the disparity of opinion on this point.

on deposition by the attorney for the co-defendant, Gerald Suggs. Appearing at the deposition were counsel for the defendant Suggs, Milton, and O'Leary, who was in charge of the prosecution of all four men. Prior to the commencement of the deposition, O'Leary made the following statement on the record.

> Just for the record, I would like to make some prefacing statements just so it be understood, that number one, that it be noted Mr. Milton is here representing Mr. Gunsby in this case; that he is a co-defendant along with Gerald Suggs, and that there was an order entered on June 27, by David Patterson, to show cause if any, why, if any cause can be shown, Earl Gunsby's agreement and negotiated plea with the State of Florida should not be negated or set aside based on the inconsistent statements and testimony in the trial of a third defendant, Tony Smith. And that he is here now subpoenaed as a defense witness.[3]

Sometime after the deposition, the state court conducted a hearing at which the court permitted the respondent to set aside the plea agreement. Thereupon the petitioner pled not guilty and the case was set for trial in October, 1974.

Soon after the case was set for trial, counsel for the petitioner filed a motion to suppress the petitioner's statements made to a police officer immediately after his arrest, his sworn statement made to the state attorney on March 1, 1974, and his deposition taken on July 15, 1974. The state court granted the motion to suppress as to the statements to the police, but denied the motion as to the other statement and the deposition.[4]

At petitioner's trial held on October 25, 1974, the respondent called three witnesses: the victim, Ronald Brown; a convicted co-defendant, Harvey Baker; and a court reporter, Eleanor B. Bothwell. Mr. Brown testified that he could not identify the peti-

tioner as one of the two men who robbed him, but that petitioner might have been the third man who was a lookout. Mr. Harvey testified as to his own involvement in the robbery and implicated the petitioner. Ms. Bothwell, the reporter who had taken both the petitioner's sworn statement and his deposition, read both sets of her notes into evidence. The petitioner objected to the introduction of the statement and the deposition. The jury returned a guilty verdict and petitioner was sentenced to twenty years confinement. Petitioner appealed his conviction and raised as the principal ground for reversal the admission of the statement and the deposition. A unanimous panel of the Florida Second District Court of Appeal affirmed the conviction of the petitioner. *Gunsby v. State*, 316 So.2d 313 (2d D.C.A. Fla. 1975).

The petitioner then filed for a writ of habeas corpus in this Court. The thrust of petitioner's claim is that the sworn statement and the deposition were made pursuant to the plea agreement and were thus inadmissible at his trial.

In this Court's order initially granting the petition, the Court relied on the Magistrate's report which cited *Ross v. Meek*, 531 F.2d 924 (8th Cir. 1976). The Eighth Circuit in *Ross* established a per se inadmissibility rule to statements given as a result of a plea agreement. Several days after this Court entered its order granting the petition, the Supreme Court reversed the Eighth Circuit's holding in *Ross*. *Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). The Supreme Court in *Hutto* held that the appropriate standard for the admission of confessions or statements was whether they were voluntary. *Ross, supra*, 97 S.Ct. at 203. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) and *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

3. Record at 187–188.

4. It is interesting to note that five different state judges presided over the petitioner's case

at various times: 1) arraignment; 2) change of plea hearing and motion to vacate; 3) approval of the plea agreement; 4) motion to suppress hearing; and 5) trial of the case.

## FINDINGS OF FACT

### A. The Petitioner's March 1, 1974 Statement.

On March 1, 1974, the petitioner appeared in state court for a change of plea hearing. The agreement which was finally negotiated was based upon the plaintiff's agreement to testify against two co-defendants in return for a maximum sentence of seven and one-half years. The respondent also agreed to remain mute if the state court decided to impose probation on the petitioner who had no prior convictions. The colloquy between the state trial judge and the respondent's counsel addressed the terms of the plea agreement as follows:

The Court: Well, I believe the addition to the plea bargain was that he [petitioner] would testify specifically in the case against Smith and Suggs.

Mr. O'Leary [respondent's trial counsel]: Yes, sir.

The Court: And that that was the State's basic understanding of what he would testify to.

Mr. O'Leary: Yes, sir. Again for the record, your Honor, the State intends to take Mr. Gunsby and Mr. Baker today immediately after these proceedings and obtain statements basically to what was said.[5]

The record of the plea agreement also indicates that the petitioner would testify as to Smith's role in planning the robbery and driving the get away car.

After inquiring personally of the petitioner regarding his decision to plead guilty the court made several findings:

The Court: The Court further finds you have not been coerced or forced to enter this plea, and the plea is free voluntary, and you have not been offered anything in return for your plea, other than what appears of record in the courtroom this morning.[6]

At the conclusion of the change of plea hearing the court instructed the petitioner in the following manner:

The Court: Mr. Gunsby, the Court finds that bond which is now posted is broad enough in its scope to also include final disposition, including sentencing, so you are released under that particular bond. It is going to be *your obligation* to remain here in the court with the state and give them a statement here today. Mr. Milton, I am sure, will accompany you. And then take you to probation.[7] [Emphasis Added]

Counsel for the petitioner testified that he would not have permitted the petitioner to testify or give any statement if there had been no plea agreement. Counsel for respondent testified the reason for the statement was to assist in trial preparation and was not a condition of the agreement. Counsel for the respondent when questioned as to whether he would have permitted the plea if the petitioner had not given the statement answered that it was a "hard question" but that he probably would not have moved to vacate the plea.

Subsequent to the change of plea hearing and the statement, the petitioner testified at the Tony Smith trial on March 28, 1974, at which Smith was acquitted. The respondent, dissatisfied with the petitioner's testimony and the verdict, moved on June 26, 1974, to vacate the plea agreement. The respondent's motion at paragraph two stated:

2. That *pursuant* to the said agreement a sworn statement was taken of the defendant, Earl Gunsby, on March 1, 1974, implicating co-defendant in the planning and prior knowledge of the robbery, copy of which is attached hereto and made a part hereof.[8] [Emphasis Added]

Additionally, respondent's counsel during a motion to suppress hearing held on September 5, 1974, gave a similar response:

---

5. Record at 261–262.

6. Record at 268.

7. Record at 269–270.

8. Record at 5.

Q. [By Mr. Milton, petitioner's counsel]: And subsequent to his change of plea, did he [petitioner] not make a statement to you?

A. [By Mr. O'Leary, respondent's counsel]: He changed his plea to guilty, and shortly thereafter I talked to him at the state attorney's office accompanied by you with the court reporter, Mrs. Bothwell, and he gave a statement.

Q. And was this all pursuant to the plea negotiations?

A. Yes.[9]

■ The petitioner's exposure to and experience with the criminal justice system at the time of the offense was minimal. Gunsby, who was twenty-one years old when the robbery was committed, had had only minor brushes with the law and had never been convicted of a felony prior to the instant case. He had completed the ninth grade and part of the tenth. His testimony indicates a complete reliance on the advice of his attorney and a failure to appreciate either the basic elements or the nuances of the fifth amendment and teachings of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court finds that the petitioner was not aware of the self-incriminating implications of either his statement or his deposition.

Considering the terms of the plea negotiations and the agreement, the trial court's statements at the change of plea hearing, the testimony of petitioner's and respondent's counsel, and the petitioner's understanding of the proceedings, the Court is of the opinion the statement was not voluntary.

B. *The Petitioner's July 15, 1974 Deposition*

On July 15, 1974, the petitioner appeared before a court reporter and was deposed regarding his involvement in the robbery of Ronald Brown. Gunsby had been subpoenaed for the deposition by a co-defendant, Gerald Suggs. At the commencement of the deposition, counsel for the respondent made a statement regarding the pending motion to vacate the plea.[10]

During the deposition the petition extensively inculpated himself and Gerald Suggs, and in general discussed the basic facts surrounding the robbery.[11] The petitioner also discussed the planning of the robbery and the beating of Brown by Suggs and Harvey Baker.[12] The petitioner was also questioned at the deposition by trial counsel for respondent, counsel for the co-defendant Suggs, and his own attorney.

At the evidentiary hearing before this Court, O'Leary testified his initial statement was to put the petitioner and his counsel on notice as to the pendency of the motion to vacate and the order to show cause. Counsel for the petitioner, Morris Milton, testified that he permitted the deposition of his client because the petitioner was bound by the plea agreement and he wanted to uphold the bargain. Milton stated that he was of the opinion that only a court order could revoke the bargain and the only way the state could use Gunsby as a witness was if he appeared at the deposition. Milton further testified that if the plea had been vacated prior to the deposition, he would not have permitted the petitioner to testify.

■ The Court is of the opinion that the deposition of the petitioner Gunsby was not voluntary on his part. The petitioner Gunsby was subpoenaed for the deposition and his counsel, anxious to uphold the bargain, permitted the defendant to testify thinking the failure to do so would prejudice the petitioner's chances of maintaining the bargain. The respondent's counsel's statements at the commencement of the deposition are subject to various interpretations. The statement, which did not advise petitioner of the respondent's intention to use the testimony at the petitioner's trial if the

---

9. Record at 70.

10. See note 3 *supra.*

11. Record at 187–224.

12. Record at 200, 201, 204, 205.

motion to vacate was granted, could be interpreted as a threat to petitioner to inculpate Gerald Suggs or suffer the loss of the bargain. It could also be interpreted as a caveat relative to petitioner's fifth amendment privilege.

At the deposition the petitioner inculpated Suggs in the planning and commission of the robbery. Although the bargain with the state related to the petitioner's testimony at the Smith and Suggs trials, the Court is of the opinion the deposition was integrally related to the testimony and part and parcel with the bargain.

## CONCLUSIONS OF LAW

In *Hutto v. Ross,* 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976), the Supreme Court held that a confession was not per se inadmissible in a criminal trial as a result of having been made subsequent to a plea bargain that did not call for a confession. The Court enunciated, as a standard for evaluating post plea bargain statements, a test as to whether they were voluntary (i. e. whether the confession was extracted by any sort of threats or violence or obtained by any direct or indirect promises, however slight, or by the exertion of any improper influence). *Id.,* 97 S.Ct. at 203; *Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); and *Bram v. United States,* 168 U.S. 532, 542, 543, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

The petitioner's statement given on March 1, 1974, was intimately related to the plea bargain reached between the parties and approved by the state court. The state judge who presided at the change of plea hearing instructed the petitioner in the presence of his attorney of the petitioner's "obligation" to give a statement. Trial counsel for the respondent on two occasions, once in a motion and later in a suppression hearing, referred to the March 1, 1974 statement as pursuant to the plea agreement. Although the ex post facto opinions of counsel are not heavily weighted, counsel

for petitioner stated he would not have permitted the statement without the plea agreement. Counsel for the respondent equivocated as to the possible recourse if the statement had been refused.

The facts in the instant case are substantially different from those in *Hutto v. Ross, supra.* In *Hutto,* there had been a two week hiatus between the plea negotiations and the sworn statement. Additionally, the prosecutor had advised the defendant of his fifth amendment privilege, his *Miranda* rights, and informed him that "the terms of the negotiated plea bargain were available regardless of his willingness to comply" with the requested statement. *Supra,* 97 S.Ct. at 202. Further, the plea bargain reached in *Hutto* did not involve the obligation of the defendant to testify against any co-defendants. Finally, in *Hutto* the defendant Ross, and not the prosecution, moved to withdraw his plea.[13]

■ In the instant case the connection both in time and in substance between the bargain and the statement is manifest. The directions of the state judge were mandatory and unequivocal. The respondent's trial counsel failed to advise either the petitioner or his attorney of any of the prophylactic procedures such as those utilized in *Hutto.* Although no party anticipates at the inception of the plea bargain that it will eventually go awry, such a possibility should be clearly enunciated to a defendant who has pled guilty and is about to make a statement. Counsel for the state should inform the defendant of his fifth amendment privilege and his *Miranda* rights. Counsel for the prosecution should also inform the defendant whether the statement was an essential part of the plea bargain (i. e. whether the prosecution would move to vacate the plea bargain if the statement was not given) or whether the statement was not essential to the agreement. Thus, the Court is convinced the statement under

---

13. In *Hutto* the defendant's position is more tenuous because he sought to have the plea agreement withdrawn. Since the prosecution moved to revoke the plea in the present instance, it can be argued that the petitioner should be returned to the status quo pre-plea.

the totality of the circumstances was not voluntary.[14]

Although the deposition presents a different factual setting, the assessment of the law is the same. Petitioner was subpoenaed to the deposition; he did not voluntarily present himself. Rule 3.220 of the Florida Rules of Criminal Procedure which permits depositions in criminal cases also provides that "a person who refuses to obey a subpoena served upon him may be adjudged in contempt of the court from which the subpoena issued." Although the Florida state courts have adopted the position that the prosecution is not responsible for the production of its own witnesses at deposition, the prosecution and the nonappearing witness are subject to definite sanctions. *Fla.R.Cr.Pro.* 3.220(j); *State v. Roig,* 305 So.2d 836 (3d D.C.A. Fla. 1974); and *State v. Deville,* 258 So.2d 492 (3d D.C.A. Fla. 1972).

In the present circumstance, the petitioner had a bargain with the state to testify against the co-defendant Suggs who had subpoenaed him for the deposition. The possibility of the imposition of sanctions against the petitioner through the Florida Rules of Criminal Procedure was clear, but the possibility of other sanctions, specifically the revocation of the plea agreement, was also looming in the foreground. The respondent argues that the motion to vacate, the order to show cause, and the statement of counsel at the beginning of the deposition placed the petitioner on notice as to the possibilities of non-compliance with the bargain. There is no doubt that the petitioner was on notice at the time of the deposition, but the question is as to what. Respondent argues that the petitioner was on that notice that his statement at the deposition might be used against him. Petitioner argues that he was on notice only that non-compliance would result in revocation. Since the petitioner was satisfied with the plea bargain and wanted it enforced, he testified at the deposition so that he could testify at the trial without complications. The deposition inculpated the petitioner and also inculpated the co-defendant Suggs not only as an accomplice in the robbery, but also as one of the two principal participants.

In *Bram* the Supreme Court suggested consideration of whether the confession was extracted by any direct or implied promises. Here the promise was the bargain; the promise to testify against Suggs and Smith in return for a guilty plea and a seven and one-half year maximum for his sentence. The Court is convinced that the deposition was not voluntary, but part of the promise to testify and compelled by the subpoena.[15]

14. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court addressed the necessity for procedural safeguards which would effectively secure the privilege against self-incrimination. *Miranda* specifically focused on in-custody interrogations without the assistance of counsel and the possibility of coercive psychological pressure. The context in which the statement was given in the present case does not fit neatly into the *Miranda* scenario but the differences are not sufficient to warrant a converse result. The petitioner herein was instructed by the state court of his obligation to give a statement and the prosecutor never informed the petitioner of his right to remain silent or the possibility that the statement might be used against him. Although petitioner was represented by counsel, the record should be clear that the petitioner comprehends the possible import of his statements. Here the situation is particularly delicate because the petitioner who has just pleaded guilty and made a statement in a protected forum is asked to make a statement which can potentially be used against him, without being informed of that potentiality. *See Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). The Court is of the opinion for the statement to be completely voluntary the petitioner should have been informed of three significant issues: 1) his right to remain silent; 2) the possibility that any statement he makes might be used against him; and 3) that the statement was either essential or nonessential to the fulfillment of his obligations under the plea agreement. Such a requirement will insure knowing and voluntary statements and will demonstrate the nexus between the statement and the plea bargain.

15. Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure prohibit the admission of "statements made in connection with, and relevant to, any of the foregoing pleas or offers . . ." The Standing Committee on Rules of Practice and Procedure of the Judicial Conference of the United States has recently proposed several

Accordingly, it is ORDERED:

1. That the judgment and sentence entered by the trial court, together with the commitment in said case, be and the same are hereby voided.

2. That the State of Florida shall release petitioner on said charge unless he is brought to trial thereon within one hundred twenty (120) days from this date.

3. In the event petitioner is convicted after a new trial his sentence shall not exceed the sentence imposed at his original trial and he shall be given credit for the period of his prior incarceration.

4. The Clerk is directed to enter judgment and the parties are to bear their own costs.

IT IS SO ORDERED at Tampa, Florida this 14 day of April, 1978.

changes in Rule 11(e)(6). The most significant change would amend the "in connection with, and relevant to" language. The amendment would change the language to "statements made in the course of or as a consequence of such pleas or plea discussions." *United States v. Herman,* 544 F.2d 791 (5th Cir. 1977) contains a diversity of opinion on the interpretation of the present rule. Although the two federal rules are inapplicable in the present habeas corpus proceeding, they do offer an example of the codification of the voluntariness standard into the plea negotiation and post-plea statements area. It is interesting to note that the most recent revisions of the Florida Rules of Criminal Procedure contain a new rule which follows the Federal Rule. Rule 3.172 of the Florida Rules of Criminal Procedure which was adopted on February 10, 1977, and became effective July 1, 1977, provides:

> Except as otherwise provided in this Rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, *or of statements made in connection therewith,* is not admissible in any civil or criminal proceeding against the person who made the plea or offer. [Emphasis Added]

See generally, Note, *The United States Courts of Appeals: 1976–1977 Term Criminal Law and Procedure,* 66 Geo.L.J. 245, 344–349 (1977).