UNITED STATES of America,
Plaintiff-Appellee,

v.

Bernard BROOKS, Defendant-Appellant.

No. 81–1504
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 19, 1982.

Richard P. Mesa, El Paso, Tex., for defendant-appellant.

Sidney Powell, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

A jury convicted Bernard Brooks of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[1] Once again seeking as he earlier did to make a deal, he raises three issues on appeal. Unpersuaded by his arguments, we affirm.

## Let's Make a Deal

Judge Bunton, in his Order regarding motion to dismiss, accurately and colorfully presented the pertinent facts. As it is beyond improvement by this Court, we quote extensively. "Defendant Bernard Brooks was stopped at the Permanent Border Patrol checkpoint near Sierra Blanca, Texas, east of El Paso, in the early morning hours of April 10, 1981. Inspection of the car he was driving revealed quantities of cocaine, pills and marijuana. Brooks and the other occupant of the car, Deborah McCulla, were detained, and the Drug Enforcement Administration (DEA) in El Paso was called. About 6:30 a. m., DEA agents Frensley and Jason arrived at the checkpoint. According to defendant, he immediately approached Frensley, saying in substance: 'It's my cocaine; can't we work something out?' The defendant analogized the situation to the television show 'Let's Make a Deal,' presumably casting himself in the role of Monty Hall. His motivation, according to defendant, was two-fold: (1) to get his girlfriend, Ms. McCulla, released, and (2) to help himself, if possible.

"As agent Frensley drove defendant the 85 miles to El Paso, they continued to talk. Brooks told Frensley, 'I am a minnow, but I know the whale; let's negotiate.' Brooks indicated that he was in touch with one or more major drug dealers in Miami, who were transporting six kilos of cocaine a week to California. He offered to assist DEA to make a case against these individuals in return for some consideration for himself and his lady friend. Frensley expressed interest, but informed defendant that he had no authority to offer anything and would have to consult with his superiors after their arrival in El Paso.

"In El Paso, Ms. McCulla was released without the filing of any charges. A complaint was filed against Brooks, charging him with possession of cocaine, and upon Agent Frensley's recommendation, a personal recognizance bond was set. Brooks was interviewed by DEA Special Agent in Charge Hank Washington, who agreed to let Brooks attempt to make a case against a Miami drug dealer on DEA direction. Brooks was led to believe that, if he cooperated, no indictment would be returned against him on the drug possession charge. It is not clear from the record whether the United States Attorney's office participated in these negotiations.

"Defendant returned to his home in Ft. Walton Beach, Florida. He was shortly in contact with the drug dealer he had agreed to 'set up,' and traveled to Miami to meet him. He contacted the Miami DEA office for instructions. At that point, problems arose. The DEA agents wanted Brooks to wear a Kel transmitter to record the meetings; he refused. The agents wanted to search Brooks' car, which was to be used to pick up the cocaine; he refused that also.[2] The agents wanted to "bug" Brooks' motel room to monitor conversations; he changed motels so that this was not accomplished. According to Brooks, the cocaine deal never came to fruition. He did not contact the DEA again. The DEA office in Miami re-

1. The statute provides that:
 a) Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

2. Brooks alleges that he never refused permission to search the car. From our reading of the transcript, it seems clear that he never gave permission, either. His ambiguous testimony

centered upon his belief that the agents had "a right" to do so. That belief is irrelevant. DEA Agent Frensley, testifying at the hearing on the motion to suppress, stated that the Miami agents said Brooks was uncooperative; that they could not find the car; and that he supplied a fictitious license number. The District Court obviously did not credit Brooks' version of the story, and we are in no position to disturb its findings.

ported to Frensley on May 10 that defendant was 'uncooperative'. This indictment followed soon after."

### Let's Not Make A Deal

Brooks testified that the Florida DEA agents knew nothing of the agreement he had made with DEA in Texas and displayed a "cavalier" attitude about his personal safety. For example, as his contact stood well over six feet and weighed almost 300 pounds, Brooks was concerned—with some justification—for his personal safety, should the transmitter be discovered. To their charge that he was uncooperative, he counters that the Florida DEA agents were the uncooperative ones. The transaction with his contact, he explains, occurred before the agents had time to bug the room. He suggested that they follow and make the arrest later, but the agents declined since an arrest out of their jurisdiction would not bolster their statistics. The Florida agents, presumably, wanted no part of a deal with Monty.

Brooks was convicted after a jury trial and sentenced to five years' imprisonment with a five-year special parole term. Arguing that the Government breached its agreement to dismiss the case and that the trial court erred in admitting certain evidence, Brooks appeals. In keeping with the District Judge's style, we discuss Brooks' assertions in order.

### Door Number 1: It Takes Two To Tango

■ Brooks, the latter-day Monty Hall, claims that the Government failed to live up to its agreement to dismiss the case if he cooperated in attempting to arrest the "whale" in Miami. Analogizing to the law of contracts, he argues that the United States breached and that this Court should, in effect, decree specific performance by dismissing the indictment. Responding in similar vein, we point out that a contract requires *two* parties, each offering something in the exchange. The jury presumably found, and we agree, that Brooks reneged on the deal by refusing to wear the transmitter, failing to cooperate with the bugging of the motel room, and departing Miami without notice. While Brooks correctly observes that the United States must scrupulously live up to its agreements with a criminal defendant, his conclusion is unsound. That the government must keep its agreement presupposes that the defendant will honor his part of the bargain. *See U. S. v. Weiss,* 599 F.2d 730, 736 (5th Cir. 1979). Since Brooks did not do so, the cases on which he seeks to rely are distinguishable.

### Door Number 2

■ Next, Brooks challenges the admission of his inculpatory statements to border Customs agents and to DEA Agent Frensley. Relying upon Fed.R.Crim.P. 11(e)(6)[3] and Fed.R.Evid. 410[4] he argues that the

---

**3.** *Inadmissibility of pleas, offers of pleas, and related statements.* Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

**4.** **Offer To Plead Guilty; Nolo Contendere; Withdrawn Plea of Guilty**

Except as otherwise provided by Act of Congress, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer. This rule shall not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers where offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement.

This rule shall not take effect until August 1, 1975, and shall be superseded by any amend-

statements were made in the course of a plea bargain and thus the Court erred in admitting them. This contention is unsupported.

In a leading case in this Circuit, *U. S. v. Herman*, 544 F.2d 791 (5th Cir. 1977), we held inadmissible statements made to postal inspectors where the suspect offered to plead guilty to a robbery charge if the Government would drop murder charges against him. Although the postal inspectors in fact lacked authority to negotiate an agreement, they delayed informing the suspect until after he had implicated himself. The District Court found, and we agreed, that Herman honestly thought he was engaging in plea negotiations, so the postal inspectors' lack of authority mattered not. The relevant factor, we held, "is a defendant's perception of the government official's negotiating authority, not the official's actual authority." *Id. See also U. S. v. Ross*, 493 F.2d 771 (5th Cir. 1974).

*Herman* does not avail Brooks. No one could seriously regard his statements as part of a plea bargain. Brooks was not in any way engaged in negotiations with individuals whom he could reasonably have believed to possess the authority to make a deal. He volunteered this information to a border patrol agent immediately after discovery of the cocaine, long before anyone had broached the subject of a deal. To save his girlfriend, he acknowledged possession to anyone and everyone in sight. While we cannot disparage his chivalry, we also cannot accept his argument. Logically extended, it would permit every defendant, leaping from his automobile at the first sign of a uniform and confessing his guilt, to exclude any such testimony as a part of a plea bargain.

As we stated in *U. S. v. Robertson*, 582 F.2d 1356 (5th Cir. 1978) (en banc),

[C]onfessions or admissions which are either made in the absence of plea negotiations or which are wholly independent from any plea negotiations are still ad-

missible. Generally, a person who has been fully advised of his rights may make a full or partial admission to the arresting officers. Such a statement, if otherwise admissible under the general law of confessions, still is admissible despite the fact that the accused makes some request of those in charge. . . . It is reasonable to assume that the cooperation of an arrested person often is prompted by a desire for leniency for himself or others. Statements of confessions made in such circumstances, if they are voluntary and made with full awareness of the person's rights, are reliable, probative and constitutionally admissible evidence.

*Id.* at 1368 [citations omitted]. The government's *quid* was missing from Brooks' *pro quo*. They had made no promises at the time Brooks acknowledged his guilt. Brooks knew that neither the border agents nor Agent Frensley had any authority to negotiate, so he could not subjectively *or* objectively have believed he was negotiating for a reduced sentence. His admission fits the *Robertson* mold, and the District Court properly admitted it into evidence.

### Door Number 3

The last of Brooks' three alternatives, his argument that the District Court erred in admitting testimony that he had reached below the right floor mat of his car, pulled out a bag of marijuana, and handed it to the Border Patrol Agent, saying "here, you're going to find this anyway", proves no more convincing. He does not win the big deal of the day. The District Court held a pretrial hearing on Brooks' "motion in limine" and ruled the evidence admissible before trial as an exception to the rule against admission of other acts. We agree.

 In this Circuit, evidence of "an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an 'extrinsic' offense within the meaning of rule 404(b)," and thus admissible. *U. S. v. Gonzalez*, 661 F.2d

ment to the Federal Rules of Criminal Procedure which is inconsistent with this rule, and which takes effect after the date of the enact-

ment of the Act establishing these Federal Rules of Evidence.

488, 493–94 (5th Cir. 1981); *U. S. v. Kloock*, 652 F.2d 492, 493, 494 (5th Cir. 1981); *U. S. v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979); *see also U. S. v. Killian*, 639 F.2d 206, 211 (5th Cir.) *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981). The border agent found the cocaine within minutes after Brooks handed him the marijuana, and in the same location. Obviously the possession of marijuana arose out of the same transaction. Moreover, as the first Border Patrol Agent searched the car because he smelled the odor of marijuana, proof that the car contained marijuana was in order.

Even if the evidence were extrinsic, that fact alone does not render it inadmissible. Rule 404(b), governing the admissibility of extrinsic evidence, states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The close proximity of the marijuana to the cocaine supports an inference that Brooks knew of the drugs and intended illegally to bring them into the United States. Accordingly, this evidence fits within one of the rule 404(b) exceptions.

Having concluded that the evidence was relevant to an issue other than Brooks' character, we now must ascertain whether its probative value outweighed its prejudicial effect. *U. S. v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). As the evidence related to an offense less serious than the one with which Brooks was charged, we cannot conclude it unduly prejudiced him before the jury. Although we might have excluded this evidence, any possible error was harmless in view of the overwhelming evidence against

Brooks as to cocaine. He admitted to three separate government agents that the cocaine was his. Although he did not offer an instruction on this issue or object to the jury instructions, the Court nonetheless cautioned the jury.[5] Under these circumstances, the admission of this evidence was not reversible error.

AFFIRMED.

---

5. The judge instructed the jury "I caution you, members of the jury, that you are here to determine the guilt or innocence of the accused from the evidence in this case. The Defendant is not on trial for any act or conduct or offense not alleged in the indictment."