**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Glen HERMAN, Defendant-Appellee.**

**No. 76–1314.**

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1977.

Rehearing and Rehearing En Banc Denied March 4, 1977.

---

John L. Briggs, U. S. Atty., Jacksonville, Fla., Mark L. Horwitz, Kendell W. Wherry, Asst. U. S. Attys., Orlando, Fla., for plaintiff-appellant.

J. Cheney Mason, Orlando, Fla. (Court-appointed), Hubert W. Williams, Orlando, Fla., for defendant-appellee.

Before RIVES, GOLDBERG and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

Glen Herman stands accused of robbing a United States Post Office and killing a postal employee. On the basis of recent

changes in the governing Federal Rules of Criminal Procedure and Evidence, the district court granted Herman's pretrial motion to suppress certain incriminating statements he made to two postal inspectors during what Herman claims were plea negotiations. The government appeals, arguing that the statements were not made "in connection with" any plea discussions and therefore are admissible. We disagree and therefore affirm.

## I. FACTS

The crime occurred in Orange County, Florida on July 21, 1975. Postal inspectors advised the Columbus, Georgia police department that a warrant had been issued charging Herman with the killing, and Columbus police arrested him.[1] On August 11, 1975 two postal inspectors, O. J. Broadwater and L. S. Crawford, transported Herman from the county jail to the Columbus federal courthouse for a removal hearing. The inspectors advised him of his constitutional rights.

At the hearing Herman requested that an attorney be appointed to represent him. The magistrate promptly recessed the hearing and left to obtain an attorney. Herman remained in the hearing room with the two postal inspectors. Herman initiated a conversation during which he stated, sometimes in response to Inspector Broadwater's questions, that he was not guilty of and should not be charged with murder, that his alleged partner Brunson had fired the fatal shot, and that only one shot had been fired. Herman also asked who had brought his name into the case, whether Brunson had talked, and whether authorities had recovered Brunson's gun.

At some point during the conversation Herman made the offer that is of crucial importance to this case: he said he would plead guilty to robbery charges and produce the gun if authorities would agree to drop the murder charges. Inspector Crawford testified that the plea offer came near the beginning of the discussion, following only Herman's statement that he should not be charged with murder and his inquiry as to who implicated him. Inspector Broadwater, on the other hand, testified that Herman's plea offer occurred at the end of the discussion. Both inspectors agreed that in response to Herman's plea offer Broadwater said that they were not "in position" to make any deals. Crawford testified that the discussion ended when Herman said he did not want to disclose his gun's location before speaking to an attorney.

On August 27, 1975 a two-count indictment in the United States District Court for the Middle District of Florida charged Herman with killing the postal employee in violation of 18 U.S.C. § 1114 and robbing the post office in violation of 18 U.S.C. § 2114.[2] Herman moved to suppress the statements made to Inspectors Broadwater and Crawford at the August 11 removal hearing, claiming that they were made involuntarily and in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that they were made in connection with an offer to plead guilty. *See* Fed.R.Crim.P. 11(e)(6); Fed.R.Ev. 410. The district court held that the statements were voluntary and did not contravene *Miranda*, but excluded the statements as plea-related. The government immediately filed this appeal.

## II. JURISDICTION

We are met at the outset with the issue of our jurisdiction. 18 U.S.C. § 3731 authorizes a government appeal from a pretrial order suppressing evidence "if the

---

1. The record does not indicate whether a warrant had in fact been issued. In any event the legality of the arrest has no bearing on the evidentiary issue before us.

2. The indictment also cited 18 U.S.C. § 2, which makes aiders and abettors punishable as principals, and 18 U.S.C. § 1111, which proscribes murder "[w]ithin the special maritime and territorial jurisdiction of the United States." We express no opinion whether 18 U.S.C. § 1111 extends to a post office murder. The § 1111 penalty range is the same as the § 1114 range, and there appears to be no obstacle to proving that the victim was a postal employee. Accordingly, the indictment's reference to § 1111 is inconsequential.

United States Attorney certifies to the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." Therefore, the suppression order at issue here is appealable if, but only if, the government executed the required certificate. The requirement is not a mere formality; its purpose is to protect the accused from undue delay.

 Whether the United States attorney executed the appropriate certificate is unclear from this record. Because the government, as appellant, has the burden of compiling the record on appeal, we could properly hold that the omission of the certificate necessitates dismissal of the appeal. In the unusual circumstances of this case, however, we decline to do so.[3]

3. Omission of the certificate from the record is not "jurisdictional" in the same sense that failure to execute the certificate at all is "jurisdictional." Moreover, the issue is not the existence of federal jurisdiction over this case, but appellate jurisdiction over this interlocutory appeal of a case clearly within the federal courts' jurisdiction. We are therefore freer to adopt our pragmatic approach for dealing with the unusual circumstances with which we are faced.

4. Dismissing the appeal would probably prevent further delay because the district court would then adhere to its ruling, appellee would go to trial, and the government could not pursue a post-trial appeal. The better course is for us to address the merits, however, in order to prevent any government efforts to have the district court reconsider its suppression order and in order to preclude the possibility that the government could somehow raise the same issues in an appeal from some additional pretrial order.

Alternatively, we could require the government to produce the certificate at this late date. Such an approach is unacceptable, however, for at least two reasons. First, appellee would suffer further and unjustifiable delay. Second, although other courts have allowed certificates to be filed late, see Meier v. Keller, 521 F.2d 548 (9th Cir. 1975), cert. denied, 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976), United States v. Wolk, 466 F.2d 1143 (8th Cir. 1972); United States v. Welsch, 446 F.2d 220 (10th Cir. 1971), the certificate process cannot serve its function unless the responsible prosecuting official makes a thorough and conscientious analysis of the case before deciding to appeal. The certificate is the official's representation

Neither party raised the jurisdictional issue, and the absence of the certificate did not come to our attention until this opinion was being prepared. The certificate requirement is meant to protect the defendant by eliminating unjustified delay, but at this stage the delay has already been incurred, and vacating the appeal could not effectuate the congressional purpose. Because we had already resolved to uphold Herman's position, reaching the merits serves to protect, not undermine, Herman's right to a speedy disposition of the charges against him.[4] We therefore afford the government the review it seeks, but we serve notice upon it that we will entertain no future § 3731 appeals unless the appropriate certificate is incorporated in the record on appeal.[5]

that such an analysis has been made, and we must therefore require the certificates to be filed promptly.

5. We also call to the parties' attention the penultimate paragraph of 18 U.S.C. § 3731, which provides that "[p]ending the prosecution and determination of the appeal . . . the defendant shall be released in accordance with chapter 207 of this title." Chapter 207 deals generally with release of a defendant pending trial, 18 U.S.C. §§ 3146, 3148, and pending a defendant's appeal from conviction, 18 U.S.C. § 3148. Under § 3146(a) a judicial officer must release a defendant awaiting trial for a noncapital offense, preferably on his or her own recognizance or alternatively under conditions "reasonably assuring the presence of the defendant at trial." United States v. Cramer, 451 F.2d 1198, 1200 (5th Cir. 1971), quoting Brown v. United States, 392 F.2d 189 (5th Cir. 1968). In unusual cases, however, the conditions can be such that the defendant may, as a practical matter, be unable to meet them. See 18 U.S.C. § 3146(d). Under § 3148 a convicted defendant (or a defendant awaiting trial for a capital offense) need not be released pending appeal if he or she poses a danger to the community or is likely to flee, although such cases are surely rare. See Harris v. United States, 404 U.S. 1232, 30 L.Ed.2d 25, 92 S.Ct. 10 (1971) (Douglas, Circuit Justice).

It is unclear whether the § 3731 provision that pending a government appeal a defendant "shall be released in accordance with chapter 207" means that a defendant must always be released or instead incorporates, as appropriate, either the § 3146 discretion in unusual cases to impose conditions with which a de-

## III. MERITS

Fed.R.Crim.P. 11(e)(6) makes inadmissible any statement made "in connection with" any offer to plead guilty or nolo contendere to the charged crime or to any other crime.[6] Fed.R.Ev. 410 contains exactly the same provision.[7] During the course of Herman's

fendant may not be able to comply, or the § 3148 discretion to refuse to release a defendant at all. Prior to 1968, § 3731 required the defendant to be "admitted to bail on his own recognizance." In 1968 Congress broadened the category of appealable orders and inserted the reference to chapter 207. *See* P.L. 90–351. *See also* H.Rep.No.90–603. In 1970 Congress again amended the statute, expanding the government's ability to appeal and providing that the section "shall be liberally construed to effectuate its purposes." *See* P.L. 91–644. *See also United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). These changes tend to indicate the key phrase in the § 3731 release provision is "in accordance with chapter 207"; on that view the court would maintain its chapter 207 discretion in some cases to impose conditions with which a defendant could not, as a practical matter, comply. On the other hand, that Congress said "shall be released" rather than "shall be treated" in accordance with chapter 207 indicates that the key phrase may be "shall be released." Congress knew how to say "shall be treated" rather than "shall be released" when it wanted to avoid making release mandatory; when it made the § 3146 provisions applicable to some defendants while appealing their convictions, it said those defendants "shall be treated" in accordance with § 3146. *See* 18 U.S.C. § 3148. If the governing phrase is "shall be released", when the government takes a pretrial appeal the district court must release a defendant on his or her own recognizance or impose conditions with which a defendant can reasonably comply. The prosecutor must decide whether prosecuting the appeal, the effect of which is inevitably to interfere with a defendant's speedy trial interest, is sufficiently important to justify pretrial release.

We decline to decide which of these two interpretations is correct. The issue arose in this case because, as this opinion was being prepared, we received a copy of a letter Herman wrote the district judge protesting the delay in bringing him to trial. The letter indicated Herman is presently incarcerated, but our record is silent on his status. Herman may be incarcerated on additional charges, or the district court may have proceeded pursuant to 18 U.S.C. § 3146 to impose release conditions with which Herman has been unable to comply. As we have indicated, on one reading of § 3731 such conditions would be illegal. Because § 3731 deals only with release *pending appeal*, however, announcement of our decision will moot the issue. The parties have provided no guidance on the issue, and we are uncertain of Herman's status. Herman will benefit more from expedited rendering of this opinion than

from any other steps that we could take. We therefore decline to resolve the § 3731 ambiguity at this stage of the proceedings.

6. Fed.R.Crim.P. 11(e)(6) provides:

 Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

7. The original rule 410 was somewhat different from the current rule. Although part of the Federal Rules of Evidence that became effective July 1, 1975, rule 410 by its terms was not to take effect until August 1, 1975 and was to be superseded by any inconsistent amendment to the Federal Rules of Criminal Procedure. The reason for these provisions was that Congress was continuing to study the issue. *See* Conference Committee Notes, H.Rep.No.93–1597. Before original rule 410 became effective, Congress amended Fed.R.Crim.P. 11(e)(6) to deal with plea-related statements, and original rule 410 therefore never took effect. *See United States v. Martinez*, 536 F.2d 1107 (5th Cir. 1976). In December 1975 Congress amended rule 410 to conform precisely to the rule 11(e)(6) language. *See* Pub.L.No.94–149, § 1(9), 89 Stat. 805. The district court entered the suppression order at issue here on January 7, 1976; the current rules were in effect and therefore are controlling.

The only difference between original rule 410 and the current rules that could bear on the issue before us is that original rule 410 made inadmissible any statements made "in connection with" plea offers, whereas rule 11(e)(6) and current rule 410 exclude statements made "in connection with, and relevant to" plea offers. In enacting rule 11(e)(6), however, Congress accorded no significance to the difference in terminology. *See* H.Rep.No.94–414 (thrice saying rule 11(e)(6) excludes statements made "in connection with" plea offers; nowhere referring to "and relevant to" phrase). The rule 11(e)(6) advisory committee notes simply

discussion with the postal inspectors, he offered to plead guilty to robbery. The question before us is whether Herman's other statements were made "in connection with" the plea offer.[8]

To construe rule 11(e)(6) correctly we must set it in proper perspective. Plea bargaining is a practice many have criticized and few have enthusiastically endorsed. Nevertheless, plea bargaining has become an accepted fact of life. By 1971 the Supreme Court was able to encourage the practice, albeit on grounds of necessity rather than right:

> The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

*Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

The legal battleground has thus shifted from the propriety of plea bargaining to how best to implement and oversee the process. Plea bargaining is a tool of conciliation. It must not be a chisel of deceit or a hammered purchase and sale. The end result must come as an open covenant, openly arrived at with judicial oversight. A legal plea bargain is made in the sunshine before the penal bars darken. Accordingly, we must examine plea bargains under the doctrine of caveat prosecutor.

Even before the enactment of rule 11(e)(6), we held that plea-related statements are inadmissible, recognizing the inescapable truth that for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him. In excluding a defendant's plea-related statements, Judge Coleman wrote:

> If, as the Supreme Court said in *Santobello*, plea bargaining is an essential component of justice and, properly administered, is to be encouraged, it is immediately apparent that no defendant or his counsel will pursue such an effort if the remarks uttered during the course of it are to be admitted in evidence as proof of guilt. Moreover, it is inherently unfair for the government to engage in such an activity, only to use it as a weapon against the defendant when negotiations fail.

*United States v. Ross*, 493 F.2d 771, 775 (5th Cir. 1974). *See United States v. Smith*, 525 F.2d 1017 (10th Cir. 1975). *Cf. Crawford v. United States*, 219 F.2d 207 (5th Cir. 1955) (plea related statement held involuntary and thus constitutionally inadmissible). The *Ross* holding was codified in rule 11(e)(6).

Against this backdrop the inappropriateness of giving the rule an inhospitable reading becomes clear. Excluded statements must be made "in connection with" plea offers, but if we are overly exacting in deciding which statements come within this standard, we will deter the unrestrained candor that often produces effective plea negotiations. Defendants must be free to

---

cross-reference the notes to original rule 410; the terminology changes are not even mentioned. In addition, the legislative history of the law conforming rule 410 to rule 11(e)(6) accords no significance to the "and relevant to" phrase. *See* H.Rep.No.94–599. At any rate, we perceive no difference in the formulas; the same statements fall within both descriptions. The phrases "in connection with" and "relevant to" do not mutually cancel one another. Taken together, they are phrases of expansion, not restriction.

8. We do not pass upon the district court's ruling that Herman's statements were neither in-

voluntary nor adduced in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Herman made the statements after requesting an attorney but before the government provided one. Although authorities at some point can resume questioning after a defendant has asked that questioning cease, so long as his or her "right to cut off questioning [is] scrupulously honored," *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed. 313 (1975), whether authorities can resume questioning after a defendant has asked for an attorney is unsettled.

participate in open and uninhibited plea discussions, and their decisions to do so must not later be subjected to microscopic judicial examination to determine whether the statements were closely enough related to the plea offers. Statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return for a plea.

Indeed, even settlement negotiations in civil cases have been curtailed by evidentiary impenetrability. *See, e. g.,* Fed.R.Ev. 408. The necessity for sanctuaries in plea bargaining in criminal cases is no less compelling. If plea bargaining is pragmatically justified despite its potential for abuse, we should encourage candor by the accused, eschewing an interpretation of the rules that would make the accused less amenable to forthright plea discussions. The accused in the pretrial bargaining should be encouraged by knowledge that the discussions will have a sanctity. Hypertechnical considerations should not determine whether pretrial bargaining may come into the testimony at the trial. Having embarked on the road that permits plea bargaining, the government should be most careful lest it be accused of bad faith in throwing open to the trial matters that the accused thought were not to be used against him or her. To hold otherwise would greatly diminish, if not nullify, the use of plea bargaining.

The government argues, however, that if all such statements are excluded, clever defendants will append plea offers to their incriminating statements and thereby render the statements inadmissible. The government does not explain why clever defendants would not simply refrain from making incriminating statements altogether, nor how the offering of an inadmissible statement will impede the prosecutor's ability independently to assemble a case as he or she always must. The government's speculative concern gives us no cause to subordinate the policy of encouraging open plea discussions or to ignore the rule's plain language. In the long run prosecutors will benefit from the more effective plea negotiating process that today's result will foster.[9] We need not fear that sophisticated defendants will abuse the rule we announce today, but if we were to construe the "in connection with" standard more narrowly sophisticated prosecutors might sometimes use the rule as a trap for the unwary. To allow prosecutors to use plea-related incriminating statements to prove a defendant's guilt would be inherently unfair, as we noted in *Ross.*

Moreover, the government's inability to introduce the statements made in a bargaining session does not place it in a worse position than it would occupy if an accused chose not to engage in plea bargaining at all. If we permit the facts concerning a plea bargain to be brought out in evidence, we will have silence on the part of every knowledgeable accused. Discussion will not be worth the price of the potential bargain. An unexpansive reading of relatedness would go to the heart of the rule, which is the protection of plea discussions. The rule's central feature is that the accused is encouraged candidly to discuss his or her situation in order to explore the possibility of disposing of the case through a consensual arrangement. Such candid discussion will often include incriminating admissions. If we were to follow the government's argument, however, such admissions would be admissible if not accompanied by a preamble explicitly demarcating the beginning of plea discussions. To allow the government to introduce statements uttered in reliance on the rule would be to use the rule as a sword rather than a shield. This we cannot allow; the rule was designed only as a shield.

If Congress had wanted plea bargaining to be formalized, ritualized or structured,

---

**9.** Indeed, prosecutors, too, may make statements during plea negotiations that they would prefer not to have revealed to a jury. The rule may not only help prosecutors by encouraging plea negotiating; it may make inadmissible some of the prosecutor's own statements, *see United States v. Verdoorn,* 528 F.2d 103 (10th Cir. 1976), an issue upon which we express no view.

the rules could have so provided. But Congress, believing that plea bargaining is a necessary ingredient in criminal prosecutions of the magnitude we face, wanted an accused freely to discuss his or her plight, the probability of punishment and the possible range thereof. Having embarked on the plea bargaining route, Congress did not intend the accused to be convicted by the bargaining words Congress had encouraged him or her to utter. We cannot ascribe to Congress any intention to sandbag an accused in his or her plea bargaining sessions. The government, as one of the dancing partners, should not be able to lead its partner to a trap door on the dance floor.

■ Rule 11(e)(6) recognizes the existence and practice of plea bargaining and is a rule of encouragement. It should not be construed as a tempting rule with built-in deception. It should not be used to seduce confession or admission. It is a rule of evidentiary exclusion, and it should exclude lest it be destructive of the very predicate upon which it was evolved.

■ What remains is only to measure Herman's statements against the standard we have announced. Herman made the statements during the course of a conversation in which he sought concessions from the government in return for a guilty plea. In particular, Herman sought to have the government drop the murder charges in return for his guilty plea to robbery charges. The rule requires no more; all Herman's statements are inadmissible.[10]

■ The government argues, however, that Herman's statements could not have been plea-related because the postal inspectors had no authority to negotiate a plea. We reject the government's position. The relevant factor is a defendant's perception of the government official's negotiating authority, not the official's actual authority. The twin goals of encouraging unrestrained plea negotiations and assuring fairness to defendants dictate that any statements made by a defendant as part of an effort to reach a plea agreement must be excluded; it makes no difference that the defendant's efforts are misguided because the official cannot or will not accept the offer.[11]

An accused does not have ready in hand an almanac showing the jurisdictions and powers of the various public officials. Accordingly, the accused often will not know whether the party with whom he or she is speaking has the power to negotiate a plea. Many officers today carry printed forms of the *Miranda* warnings. Perhaps if the rule the government seeks here were adopted, we would be driven to require an officer entering discussions with an accused to hand out a card saying "no authority to negotiate for a plea." The need to go to such lengths to avoid unfairness under the government's proposed approach convinces us that an officer's actual authority cannot be dispositive. Moreover, if rule 11(e)(6) applied only to officials with actual authority to make a bargain, it would have no scope of operation at all, for only the judge has final authority to approve any recommended bargain.

■ Finally, the government counters that even under the standard we have announced, Herman's statements are admissi-

10. Indeed, ours is an especially strong case for excluding the statements because they were so closely related to the plea offer that the postal inspectors could not agree on which statements came before the plea offer and which came later. Whatever the sequence, of course, all the statements are inadmissible. The rule is designed to prevent admissions from becoming admissible when they occur in connection with an offer to plead guilty; it borders on the ludicrous to make their admissibility depend upon whether the actual offer came first, last or in the middle of the conversation.

11. Earlier decisions excluding plea-related statements have not focused upon the official's bargaining authority. For example, our decision in *United States v. Ross, supra,* involved a defendant's statements to a narcotics agent, not a government attorney. *See also United States v. Smith, supra* (statements to investigating officer and FBI agent); *Crawford v. United States, supra* (statements to narcotics agent).

ble because he could not possibly have thought that the postal inspectors had authority to bargain. If the government were correct on the facts, it would prevail. When a defendant knows that the people to whom he or she is speaking cannot negotiate a plea, and when they have not intimated that they will communicate the defendant's statements to someone who does have negotiating authority, the defendant's statements simply are not plea-related. Here, however, we cannot say that the district court's implicit finding that Herman thought he was engaged in plea negotiations was clearly erroneous. First, according to Inspector Broadwater's testimony he did not tell Herman that the inspectors lacked authority until after the incriminating statements were made. The government is therefore wrong when it asserts that Herman could not have assumed that the inspectors, who certainly held themselves out as "the authorities," possessed plea negotiating authority.[12] Second, Inspector Broadwater's disclaimer of authority was not unambiguous; he said he was not "in position" to make any deals, but such a statement is not an unusual negotiating tactic of one faced with an offer not quite acceptable. Broadwater neither told Herman he would have to deal with the prosecutor nor made any similar unequivocal statement indicating total lack of negotiating authority. The postal inspectors had all the trappings of officialdom, and they should not now be permitted to use those trappings to trap the accused.

The district court held Herman's statements plea-related, and only in an egregious case would we overturn such a district court finding. The order suppressing Herman's statements is affirmed.[13]

GEE, Circuit Judge (specially concurring):

I concur in the result reached by the majority, since it seems to me that evidence exists in the record to support a finding by the trial court that the postal inspectors delayed informing Herman that they had no authority to plea-bargain with him until after he had made the incriminating admissions. Therefore, the admissions were properly suppressed under Fed.R.Crim.P. 11(e)(6) or Fed.R.Evid. 410—which in identical language exclude any statement made "in connection with, and relevant to" a plea bargain. Herman's admissions were both. With entire deference and respect, I observe that the majority opinion decides many points of law not presented by the case in hand and some of them most dubiously, in my view. Being dicta, these expressions will doubtless work little harm, but I cannot join in them. A few illustrations will suffice.

In the text, at note call 6, the majority so entirely reads the congressional language "and relevant to" out of both rules as to omit it from the quotation. The reasons for this presumably appear in footnote 7, where by reference to the legislative history the majority concludes that the phrase is meaningless since Congress did not give reasons there for putting it in. I am not accustomed to treating clear congressional expressions so lightly nor, as I have noted earlier, is there any occasion to do so here, the excluded statements meeting the category on both qualifications. Nor do I agree that, by adding the phrase "and relevant

---

12. Inspector Crawford testified the plea offer and denial of authority came early in the discussion; according to his version Herman made some of the incriminating statements after being told the inspectors were not in position to make any deals. The government, however, had the burden of proof, and if the sequence were crucial the trial judge's suppression of the evidence would indicate that he resolved the conflict in Herman's favor. At any rate, that the postal inspectors disclaimed plenary authority to make a deal after the plea

discussions were proceeding cannot affect the outcome of this case.

13. To eliminate any confusion, we make clear that all Herman's statements during the recess of the August 11, 1975 hearing are inadmissible. The district court went through the suppression hearing transcript line by line, indicating which statements would be excluded. The court failed explicitly to exclude several references to the incriminating statements, presumably inadvertently. All the statements are inadmissible.

to" the plea bargain, the Congress expanded rather than restricted the category of excludible statements. One might as well say that the phrase "two-legged creatures" is expanded, not restricted, by the additional qualifying phrase "with feathers." Congress may well have envisioned the possibility of admission of a crime or crimes other than that being plea bargained about, like the two irrelevant robberies and four murders in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); and I would not rush to attempt, by dicta, to foreclose this reasonable construction of its language.

I also find dubious the court's sweeping observation that, "Statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return for a plea." The effect of this exceedingly hospitable reading of the rule is that any and all admissions can be effectively sanitized and retracted by injecting an irrelevant plea demand later in the discussion and after the horse is out of the barn. Thus, we set the stage for such spectacles as prosecutors or investigators decamping after obtaining just enough of an admission to be of use, perhaps pursued by a shouted offer to plead. It is entirely possible that avoiding such ludicrous scenes was another congressional purpose in appending the "and relevant to" qualification to the exclusionary rules' language. Such unqualified and sweeping black-letter generalizations are not necessary to decision of this cause, and I, with all deference, decline to join in them.