Steven DeWayne RANDS, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff). (Two Cases)

Nos. 90–89, 90–90.

Supreme Court of Wyoming.

Sept. 25, 1991.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Defender Aid Program, and Donald F. Carey, Student Intern, for the Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Milo M. Vukelich, Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Steven Rands appeals from his convictions for conspiracy to commit first-degree murder in violation of Wyo.Stat. §§ 6–1–303 (1988) and 6–2–101 (Supp.1991) and for aggravated burglary in violation of Wyo.Stat. § 6–3–301 (1988).[1]

We affirm.

Appellant presents the following issues for our review:

 I. Whether the evidence was sufficient to sustain the conviction for conspiracy to commit murder in the first degree.

 II. Whether the State violated W.R.Cr.P. 15(e)(6) by introducing statements made at a change of plea hearing at trial.

 III. Whether the State violated Defendant's sixth amendment right to confront witnesses, by introducing out of court statements made by a co-defendant at trial.

In the evening of November 22, 1989, Karen Head and Michael Head were driving their car to Lusk, Wyoming. As they proceeded north on highway 85, Appellant began following them in his car and drove within one or two feet of the rear bumper of their car. Appellant began to pull his vehicle up beside the Heads' vehicle as if he were going to pass. Instead, Appellant kept his car in a position just short of being parallel with the Heads' vehicle. All of a sudden, the passenger in Appellant's car, Gerald Ellett, fired a shot from a pistol, striking Mr. Head in the back. Appellant's vehicle passed the Heads' vehicle and slowly drove away. Mr. Head was not seriously injured. One day later, the police arrested Appellant in Torrington, Wyoming, and searched his car. Among other things, the police found a .38 caliber pistol, a flashlight, and a number of coins. One of the

---

1. Appellant was also convicted of escaping by violence in violation of Wyo.Stat. § 6–5–207 (1988), but he has not appealed from that conviction.

cartridges in the gun had been fired. On November 25, 1989, Mr. and Mrs. James Gamble returned to their home in Torrington, Wyoming, and discovered that it had been burglarized. The Gambles reported that a gun, a flashlight, three twenty-dollar bills, and a number of coins were missing from their house.

Appellant was charged with conspiracy to commit first-degree murder and aggravated burglary. Appellant initially pleaded not guilty and later attempted to change his plea to guilty. The district court refused to accept Appellant's change of plea, however, because Appellant failed to provide a sufficient factual basis for the plea. The matter continued, and Appellant's case went to trial.

At trial, Appellant gave the following account of events. Appellant and Ellett were traveling north on highway 85 when Ellett saw a woman who looked like his ex-wife in the passenger seat of a car. Appellant followed the car while he and Ellett discussed Ellett's past relationship and his bitter feelings for his ex-wife. Ellett asked Appellant to pull their vehicle up beside the Heads' vehicle so he could see if the woman was his ex-wife. Ellett said that he wanted to scare the woman, and then Appellant heard the gunshot. Appellant denied having any prior knowledge of Ellett's intent to shoot at the car. Appellant also testified that he and Ellett went to the Gambles' house and that Ellett went into the house and took several items. Appellant claimed that he did not enter the house.

The jury found Appellant guilty of conspiracy to commit first-degree murder and aggravated burglary. The district court sentenced Appellant to imprisonment at the Wyoming State Penitentiary for the remainder of his life for his conviction of conspiracy to commit first-degree murder and for a minimum of seventeen years and a maximum of twenty years for his conviction of aggravated burglary. The sentences were to run consecutively.

■ Appellant's first argument challenges the sufficiency of the evidence upon which the jury relied to convict him of conspiracy to commit first-degree murder. To determine if a conviction is supported by sufficient evidence, we examine all the evidence in the light most favorable to the State. *Roose v. State*, 759 P.2d 478 (Wyo. 1988).

> "[I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.

> \* \* \* \* \* \*

> "It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence." *Broom v. State*, Wyo., 695 P.2d 640, 642 (1985) (citations omitted).

*Id.* at 487.

■ The elements of conspiracy are prescribed in § 6–1–303(a):

> (a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

In *Bigelow v. State*, 768 P.2d 558, 561 (Wyo.1989) (quoting *Jasch v. State*, 563 P.2d 1327, 1332 (Wyo.1977)), we stated:

> "A conspiracy is an agreement between two or more persons to do an unlawful act. The crime of conspiracy is complete when an agreement has been made and overt acts performed to further the unlawful design."

The elements of first-degree murder are set out in § 6–2–101(a):

> (a) Whoever purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnapping, kills any

human being is guilty of murder in the first degree.

To conclude that the evidence is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt, we must examine two questions. First, did Appellant and another person agree to "purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnapping," kill a human being? Second, did Appellant or the other agreeing person do an overt act to effect the objective of their agreement?

 "[C]ircumstantial evidence can be relied on to prove the conspiracy because of the covert nature of the crime itself." *Bigelow*, 768 P.2d at 563. Likewise, the premeditation and deliberation elements of first-degree murder may be inferred from the circumstances. *Murry v. State*, 713 P.2d 202 (Wyo.1986). Malice may be inferred from the use of a deadly weapon. *Id.; Leitel v. State*, 579 P.2d 421 (Wyo. 1978). Viewed in a light most favorable to the State, the record shows that Appellant drove his car up behind the Heads' car as it was traveling down the highway at a relatively high rate of speed. Appellant followed the Heads within two feet of their vehicle and then slowly pulled his vehicle up beside their vehicle. As Appellant maintained that position, Ellett fired a shot from a .38 caliber pistol at the Heads' car. The bullet went into the passenger compartment of the car and struck Mr. Head. In addition, a police officer who interviewed Appellant testified that Appellant said Ellett had possession of the pistol at the Gambles' residence and that Appellant said he may have told Ellett, preceding the shooting, to " '[b]low that motherfucker's head off.' " That evidence is sufficient to support the jury's conclusions that Appellant and another person agreed to "purposely and with premeditated malice" kill a human being and that Appellant or the other agreeing person did an overt act to effect the objective of their agreement.

 Appellant also contends that the district court erred when it allowed the prosecution to read statements in the presence of the jury which were made by Appellant during his attempt to establish a factual basis for a guilty plea. During trial, the following colloquy occurred:

Q Mr. Rands, do you recall testifying under oath at a previous Court appearance that you did in fact enter the residence of Mr. Gamble[]?

A I take the Fifth Amendment on that.

Q I would ask the Court to instruct the witness to answer the question.

THE COURT: Mr. Rands, this is not a charge of a crime. I don't know what it is. What do you have first of all? Go ahead.

MR. FITCH: I have Mr. Rands under oath stating, "I left my house, went to that house, and I took three $20 bills from the house." And I also have Mr. Rands stating, in response to Mr. Kissinger's questions, question, "Mr. [Ellett] entered the home with you at the same time you did?" And Mr. Rands stating, "Mr. [Ellett] entered the house and I came in."

THE COURT: Has Mr. Kissinger seen that?

MR. FITCH: He has a copy of the transcript.

THE COURT: Would you show it to Mr. Rands, please? Mr. Kissinger, you have a copy of this. Show it to Mr. Rands.

Q (by Mr. Fitch) What's the date on that?

A The date on this is February 1, 1990. I don't need to see it, Mr. Fitch. Yes, I said that.

Q You said that under oath?

A Yes.

Q Is that true?

A I believe I stated that due to the fact that I was going to get four 2 hour contact visits if I pled guilty.

Q You lied under oath thinking you could get contact visits?

A Yes.

At the change of plea hearing, the district court found that Appellant failed to estab-

lish a factual basis for a guilty plea and refused to accept Appellant's plea.

W.R.Cr.P. 15(e)(6) states:

Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

Because Appellant failed to object to the admissibility of his prior statements, we must analyze his alleged error under our plain error doctrine. W.R.Cr.P. 49(b); W.R.A.P. 7.05; W.R.E. 103(d); *Bland v. State*, 803 P.2d 856 (Wyo.1990); *Bradley v. State*, 635 P.2d 1161 (Wyo.1981); *Leeper v. State*, 589 P.2d 379 (Wyo.1979). The determination of whether plain error exists depends upon the following three-part test:

"First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has

been denied him and as a result he has been materially prejudiced."

*Ramos v. State*, 806 P.2d 822, 827 (Wyo. 1991) (quoting *Bradley*, 635 P.2d at 1164).

Our analysis of Appellant's assertion begins and ends with the third prong of the plain error test. We hold that Appellant was not materially prejudiced by the admission of the testimony from the change of plea hearing. The quoted excerpt from the trial transcript indicates that Appellant went into the Gambles' house and took $60 and that Appellant lied under oath. Both of those facts were supported by testimony which was not related to the change of plea hearing. An officer who interviewed Appellant testified that Appellant said he went into the house and took items which belonged to the Gambles. The officer also stated that Appellant described where items were located inside the Gambles' house. That testimony, in addition to the testimony from the officers who searched Appellant's car and found some of the Gambles' possessions, including a gun, was sufficient to support Appellant's conviction for aggravated burglary.[2] *See Britt v. State*, 734 P.2d 980 (Wyo.1987) (holding that a gun taken during a burglary satisfies the deadly weapon requirement of § 6–3–301(c)(i)), and *Downs v. State*, 581 P.2d 610 (Wyo.1978) (holding that possession of stolen property is strong evidence of guilt).

■ Appellant asserts that two statements made during the trial and one question asked by the prosecutor during the direct examination of a witness violated his rights under the confrontation clause of the sixth amendment to the United States Constitution. The first statement which

---

2. Section 6–3–301 provides:

(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

(b) Except as provided in subsection (c) of this section, burglary is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

(c) Aggravated burglary is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years, a

fine of not more than fifty thousand dollars ($50,000.00), or both, if, in the course of committing the crime of burglary, the person:

(i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon;

(ii) Knowingly or recklessly inflicts bodily injury on anyone; or

(iii) Attempts to inflict bodily injury on anyone.

(d) As used in this section "in the course of committing the crime" includes the time during which an attempt to commit the crime or in which flight after the attempt or commission occurred.

Appellant complains about was made by an officer in response to a question by Appellant's attorney. Appellant's attorney asked the officer how he found a metal box which had been taken from the Gambles' house. The officer said, "Through an admission of the other defendant, Gerald [Ellett], who told me that he had thrown the box out along Mile Square Road."

The statement made in response to a question asked by Appellant's attorney is not reversible error. While the statement may be hearsay, any error attributable to the district court's failure to exclude it or to strike it from the record was invited by Appellant's attorney. "Invited errors will not normally be grounds for reversal unless they go beyond a pertinent reply or are necessarily prejudicial." *Sanville v. State,* 593 P.2d 1340, 1345 (Wyo.1979). The officer's statement was a direct response to the query and, therefore, was no more than a pertinent reply. In addition, the statement was not necessarily prejudicial because other evidence existed which was sufficient to support Appellant's conviction for aggravated burglary.

■ The second statement which Appellant complains about occurred during the following dialogue:

Q Now, in this particular case, you have expressed a belief that [Ellett's] fingerprints were not lifted off of anything that you were able to lift?

A That's correct.

Q And that you had an explanation for that?

A I do.

Q And what was that explanation?

A Well, in subsequent interviews that Undersheriff Murphy and I had with Gerald Jones Ellett.

Appellant's attorney objected to the statement referring to interviews with Ellett because he believed that the prosecutor was asking the witness to repeat Ellett's statements. The district court sustained Appellant's objection and instructed the witness not to testify about what Ellett said. As a result, Appellant claims that the district court committed reversible error. Appellant has failed, however, to sup-port his position with cogent argument or cogent authority. We will not address issues which are not supported by cogent argument or cogent authority. *Bland,* 803 P.2d 856.

■ Appellant also contends that his right to confront witnesses against him was violated when the prosecutor asked questions of an undersheriff about a pretrial conference the prosecutor had with the undersheriff, Appellant, and Appellant's attorney. During the direct examination, the prosecutor asked the following question:

Q And when we were all there talking, there was information out on the table that is not here today, including what [Ellett] said, activities that are not within the evidence presented at this trial?

Appellant's attorney did not object to the question, and the witness did not reveal the content of Ellett's statements. Once again, we apply the plain error doctrine and hold that Appellant is not entitled to a reversal because he has failed to show that he was materially prejudiced by the question. *See Bradley,* 635 P.2d 1161.

■ Appellant also contends that his right to a fair trial was violated when the prosecutor asked the following question during *voir dire:*

[W]hat if * * * the guy [a hypothetical co-defendant] with the bat, we can't call for him [to] testify, and we can't, if he made a statement of any kind, you can't bring that statement in because it is hearsay, would you feel that case was woefully inadequate solely because any interview process or statement made by the guy with the bat was not brought to your attention during the course of the trial?

Appellant argues that the question was prejudicial because the prospective jurors were alerted that a co-defendant existed who made statements about Appellant which would not be admissible during his trial. Appellant's attorney did not object to the question.

We hold that the question does not give rise to plain error. Except for the statement which a witness made in response to a question asked by Appellant's attorney, the co-defendant's statements were not revealed to the jury, and Appellant has failed to cite an unequivocal rule of law which was violated when the prosecutor asked the hypothetical question.

Finally, Appellant claims that the prosecutor made comments during *voir dire* and during trial which constitute plain error. Other than statements previously discussed, Appellant has failed to provide record citations for additional comments which serve as the basis for this argument. Since the record is not "clear as to the incident which is alleged as error," there cannot be plain error. *Bradley*, 635 P.2d at 1164.

Affirmed.

URBIGKIT, C.J., files a dissenting opinion.

URBIGKIT, Chief Justice, dissenting.

Although recognizing that Steven DeWayne Rands properly plead guilty to escape and was convicted by adequate evidence of at least burglary to join his many prior convictions for the same offense, I dissent from the conspiracy to commit first degree murder conviction and the life sentence mandatorily resulting as a consequence.

In reading and re-reading this record, I concur with the trial judge when he initially found from what Rands stated when he tried to plead guilty that he neither admitted to the offense nor did the evidence properly demonstrate that the conspiracy to kill existed as an offense of attempted murder against the victims. Clearly, an offense was committed against the victims without question by the passenger in the Rands vehicle, Gerald Dean Ellett, also known as Gerald Dean Jones, but this record provides nothing to my satisfaction in its confused, antagonistic and psychopathic portrayal of Rands that murder of anyone was intended by him.[1]

Rands, age thirty-one at the date of the offense and of native American origin, commenced his problems at age ten as a product of a troubled household with alcoholic parents. His criminal record developed with foster care and juvenile placement by the age of fifteen or sixteen and continued with regularity through numerous felony convictions and charged and uncharged offenses in a multitude of states, including a Texas offense providing a parole time technically extended until the year 2030.

Rands was a life's loser, but I find nothing in this record disputing the central consistency of his testimony, no matter how drunk he was at the time of the shooting incident, that for him no killing was either planned or intended.

I remain satisfied, in application and general conception, with the burden and method of proof for conspiracy which was enunciated in *Bigelow v. State*, 768 P.2d 558 (Wyo.1989). In *Bigelow*, a conspiratorial offense was committed, e.g., attempted burglary of the Casper Wonder Bar, leaving the question relating to the identity of the participants and the character of their joint intent and common participation. Here, I lack conviction from the record that Rands expected, assisted or conspired to commit a random murder which became the substance of wrong for which his life sentence results. Further, I do not find the fortress of plain error satisfactory here to defend properly against ineffectiveness of counsel. We should not absolve introduction of the plea colloquy when rejected by the trial court in initial attempt of guilty plea and later introduced into evidence in

---

1. Ellett/Jones, on June 20, 1990 after the Rands conviction, entered a guilty plea to the same offenses, conspiracy to commit murder in the first degree and aggravated burglary, and similarly received a life sentence on the conspiracy to commit murder charge and a consecutive term of ten to thirteen years on the aggravated burglary guilty plea. Consequently, both the shooter and the driver were charged with conspiracy and neither was charged with the aggravated assault/attempted murder offense actually committed. Ellett/Jones was not called to testify at the Rands trial, although two of his statements were included in this record indicating he had been coerced into untrue accusations against Rands.

the succeeding guilt determinative trial in contravention of W.R.Cr.P. 15(e)(6), W.R.E. 410 and also the constitutional right against self-incrimination guaranteed by Wyo. Const. art. 1, § 11. *Westmark v. State,* 693 P.2d 220 (Wyo.1984).

Introduction of evidence in this trial that Rands had previously entered into plea bargaining and any reference to the factual basis could not fail to be highly prejudicial to Rands and emphatically persuasive on the jury. Extreme prejudice to jury decision is the specific reason for the explicit evidentiary preclusion of W.R.Cr.P. 15(e)(6) and W.R.E. 410 regarding non-completed plea bargaining providing that any "statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer." W.R.Cr.P. 15(e)(6).

W.R.E. 410 states:
Withdrawn pleas and offers.

Evidence of a plea of guilty, later withdrawn, or admission of the charge, later withdrawn, or of a plea of nolo contendere, or of an offer so to plead to the crime charged or any other crime, or of statements made in connection with any of the foregoing withdrawn pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer.

Case law in review of F.R.Cr.P. 11(e)(6), which is operationally the same as W.R.Cr.P. 15(e)(6) and a source of the Wyoming rule, is also similar in text to III ABA Standards for Criminal Justice § 14–2.2 (2d ed. 1980) which provides:

A plea of guilty or nolo contendere which is not accepted or has been withdrawn, and any statements made by the defendant in connection with entering such a plea of guilty or nolo contendere, should not be received against the defendant in any criminal or civil action or administrative proceedings, except that such statements may be admitted against a defendant in a criminal proceeding for perjury or false statement if the state-ments were made by the defendant under oath, on the record, and in the presence of counsel.

The history of non-admissibility of the withdrawn plea predates adoption of either rule and can be found decisively starting with *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) where the court said:

The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight the court reinstated it *pro tanto.*

*See also* the emphatic and authoritative decision in *State v. Boone,* 66 N.J. 38, 327 A.2d 661 (1974).

The clear and unquestionable phraseology of the criminal and evidentiary rules, W.R.Cr.P. 15(e)(6) and W.R.E. 410, is mandatory for rule application but also constitutional in basic intent. The propriety and effect of plea bargaining was resolved by the United States Supreme Court in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The historical derivation of F.R.Cr.P. 11(e)(6) was actually F.R.E. 410 and the substance of its federal rule predecessor remains similarly restated in III ABA Standards for Criminal Justice, *supra,* § 14–2.2. U.S.C.S. Federal Rules of Criminal Procedure, Rule 11 (1991). See also Annotation, *Propriety and Prejudicial Effect of Showing, in Criminal Case, Withdrawn Guilty Plea,* 86 A.L.R.2d 326 (1962).

Not only is the fact of the entry and withdrawal or denial of the plea inadmissible, but also statements made in connection with the plea.

Statements made by a defendant in connection with a plea or an offer to plead may not be used substantively or for impeachment in any civil or criminal proceeding against the person who made the plea or offer.

2 Weinstein's Evidence § 410[02] (1990) (footnotes omitted). *See United States v.*

*Leon Guerrero,* 847 F.2d 1363 (9th Cir. 1988) and *United States v. Herman,* 544 F.2d 791, *reh'g denied* 549 F.2d 204 (5th Cir.1977). *See also* F.R.E. 410; *Rules of Evidence for United States Courts and Magistrates,* 56 F.R.D. 183, 228 (1973); and Annotation, *When is Statement of Accused Made in Connection with Plea Bargain Negotiations so as to Render Statement Inadmissible Under Rule 11(e)(6) of the Federal Rules of Criminal Procedure,* 60 A.L.R.Fed. 854 (1982).[2]

The guilty plea admission before the jury in this case was particularly egregious since the trial court in its Rule 15 *Boykin* review had earlier determined that the initially attempted guilty plea was not sustained by sufficient evidence to be acceptable, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). When the circumstance and some facts relative to the denied plea came into jury trial evidence, it occurred in abject violation of both criminal and evidentiary rules and case law, although admittedly without objection which, in itself, was a demonstration of overt ineffectiveness of counsel.

Contemporary analysis of F.R.Cr.P. 11(e)(6) and its companion rule, F.R.E. 410, is most informatively found in the frequently cited cases of *Herman,* 544 F.2d 791; *United States v. Ross,* 493 F.2d 771 (5th Cir.1974); *People v. Cole,* 195 Colo. 483, 584 P.2d 71, 76 (1978), Carrigan, J., concurring in part and dissenting in part; and *Boone,* 327 A.2d 661.

The thoughtful legal scholarship of Justice Carrigan of the Colorado Supreme Court at a time predating Colorado adoption of F.R.E. 410 and F.R.Cr.P. 11(e)(6) recognized:

> No matter what the real reason for a bargained guilty plea may be in any particular case, whether or not the trial court will accept that plea generally depends on its determination that the plea has a "factual basis." Crim.P. 11; section 16-7-207(2)(f), C.R.S.1973. Such a

determination, in turn, requires the defendant or his counsel to satisfy the court that the defendant's conduct giving rise to the more serious charges provides an adequate factual predicate to support a finding that he is guilty of the crime to which he wants to plead. Therefore, regardless of his reasons for negotiating a plea bargain, a defendant is placed in the inherently coercive situation of either providing the court with that factual basis or having the court refuse to accept his plea and force him to trial on the more grave charges. In such circumstances, a defendant may feel constrained to state what all in the courtroom expect of him, *i.e.,* sufficient facts connecting him to the criminal incident to assure that his plea will be accepted. In my opinion, statements made under such compulsion, however subtle, cannot be viewed as "voluntary," and therefore their trustworthiness is unreliable at best. Hence, such statements should not be admissible at a subsequent trial for the offense originally charged.

\* \* \* \* \* \*

The sound public policy favoring settlement, rather than trial, of lawsuits should require that statements made in connection with settlement or plea bargaining efforts not be admissible in evidence at the trial if the settlement efforts fail. This is the long-established rule governing attempts to compromise and settle civil litigation. *McCormick, Evidence* 663 (1972); *IV Wigmore* § 1061 (Chadbourn Ed.1972).

\* \* \* \* \* \*

Last, but not least, we ought not adopt a procedure so fundamentally unfair as that approved by the majority. Normally a defendant will not make a statement, and thus provide evidence against himself, but for the State's inducement through a plea bargain. Moreover, the trial court's indication that it will refuse

---

**2.** Countervailing authority permitted rebuttal use to impeach the credibility of the accused as delineated in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). A short answer to the *Harris* decision is found in comment

that the current text of F.R.Cr.P. 11 was in part adopted to reverse *Harris.* 2 Weinstein's Evidence, *supra,* § 410[01]. *See also* F.R.E. 410 and W.R.E. 410 which provide an identical admissibility preclusion.

to accept the bargained plea unless the defendant admits facts sufficiently ensnaring him in criminal conduct to provide a "factual basis," amounts to an ultimatum delivered to one already under considerable emotional stress. Implicit in the situation is the understanding that the defendant's statement is being made solely for the court's consideration in deciding whether to accept the tendered plea. In effect the statement is extracted as a condition to obtain court approval of the plea bargain. When the court rejects the plea bargain and puts the defendant on trial on the original charge, it is not fair to allow the State to retain and use against the defendant the fruits of the rejected plea bargain. In my view this procedure is so fundamentally unfair as to constitute a denial of due process. U.S. Const. Amend. XIV; * * *.

*Cole,* 584 P.2d at 77–78 (footnotes omitted), Carrigan, J., concurring in part and dissenting in part.

In *Herman,* 544 F.2d at 797, it was said:

The rule's central feature is that the accused is encouraged candidly to discuss his or her situation in order to explore the possibility of disposing of the case through a consensual arrangement. Such candid discussion will often include incriminating admissions.

*Ross,* 493 F.2d at 775 provided further insight:

If, as the Supreme Court said in *Santobello,* plea bargaining is an essential component of justice and, properly administered, is to be encouraged, it is immediately apparent that no defendant or his counsel will pursue such an effort if the remarks uttered during the course of it are to be admitted in evidence as proof of guilt. Moreover, it is inherently unfair for the government to engage in such an activity, only to use it as a weapon against the defendant when negotiations fail.

With the two specific prohibitory Wyoming rules precluding introduction of evidence of either the denied plea or the text of statements made, the failure of defense counsel to object is unexplained. Under the circumstance of this *conspiracy* case, the introduction of that knowledge to the jury could not have been less than devastating. The devastation was anchored by the confused and highly acrimonious testimony, frequently vulgar and heavily emotional, by Rands who descriptively communicated his obvious hatred for the prosecutor. This evidentiary admission of the prior events in violation of the two explicit rules clearly reaches the plain error criteria of W.R.Cr.P. 49(b) and cannot be considered to be harmless beyond a reasonable doubt. *Campbell v. State,* 589 P.2d 358 (Wyo.1979); *United States v. Brooks,* 536 F.2d 1137 (6th Cir.1976).

The philosophic principle for the evidentiary exclusion rule was recognized in *Boone,* 327 A.2d at 666:

The problem with revealing a prior guilty plea to the jury is that it is too prejudicial, and it "may induce the jury to become reckless in its consideration of the other evidence." *State v. Thomson, supra,* 278 P.2d [142] at 150 [ (Or.1954) ] (Rossman, J., concurring).

 \* \* \* \* \* \*

The devastating effect of disclosure of a prior guilty plea to a jury was discussed by the court in *People v. Haycraft,* [76 Ill.App.2d 149, 221 N.E.2d 317 (App.Ct.1966) ]. In concluding that any evidence of a withdrawn guilty plea must be excluded, the court observed:

It is also difficult to conceive a disclosure more apt to influence a jury than the information that the accused had at one time pled guilty to the commission of the crime with which he stands charged. * * * The human mind is not a blackboard from which unwanted information can be erased at will. We can think of nothing more damaging to an accused in the minds of the jury than the disclosure, however brief, that he had admitted guilt ... and once that disclosure has been made we cannot say that he has received the fair and impartial trial to which he is entitled. 221 N.E.2d at 319.

The societal problem with this conviction and life sentence is that Rands is directed to spend the rest of his life in confinement for an offense he consistently denies committing, believing he is subjected to that result by an unfair system and, in realistic tenor of the evidence, probably did not intend to commit.[3] It is the injustice, not his status as a life's loser, that precludes my concurrence in affirming the conviction. I also have difficulty with a conviction of conspiracy for both participants where the hard factual evidence was actual commission of a crime which was either attempted murder or completed aggravated assault. Obviously, defense counsel had access to the Ellett/Jones criminal file which was not noticed for judicial information and is not available for review in this appeal. Consequently, we are not informed about what Ellett/Jones said when his Rule 15 plea colloquy was considered and sentence was entered about his night time shooting at the car on that country road. In this record, we only find a handwritten statement signed by Ellett/Jones that states Rands was not responsible for the shooting.

I would affirm the burglary conviction and reverse the conspiracy conviction to be remanded for retrial on an offense which may have been committed.

---

**3.** The length of the sentence, seventeen to twenty years for aggravated burglary, a life sentence for conspiracy to commit first degree murder to be served consecutively, with a concurrent nine to ten years for attempted escape, is not necessarily the issue. Aiding and abetting aggravated assault or a similar offense, not to ignore the aggravated burglary for which there was a conviction, in conjunction with the previous record of Rands would have sufficed under the Wyoming habitual criminal statute, W.S. 6–10–201, to justify a life sentence, W.S. 6–10–201(b)(ii). In Wyoming, a life sentence is a life sentence, subject only to pardon or commutation. *Osborn v. State,* 806 P.2d 259, 262 (Wyo.1991).